### DES MOINES, DECEMBER TERM, A. D. 1871.

IN THE TWENTY-SIXTH YEAR OF THE STATE.

PRESENT:

Hon. JAMES G. DAY, CHIEF JUSTICE.
"    JOSEPH M. BECK,
"    CHESTER C. COLE,   } JUDGES.
"    WILLIAM E. MILLER,

---

32   335|
89   498|

WHITE v. BUTT, Adm., *et al.*

1. **Judgment:** EFFECT OF REVERSAL ON APPEAL. Where, in case of
conflicting claims, money is paid into court and deposited with the
clerk, to be paid to the party found to be entitled by the court, and
it is so paid in accordance with the judgment rendered, a subse-
quent reversal of such judgment on appeal to the supreme court
will not render the person paying the money again liable to the one

White v. Butt.

adjudged on appeal to be entitled to it. The protection of the complaining party is by immediate appeal and the filing of a supersedeas. BECK, J., dissenting from this ruling under the facts of the present case.

2. Vendor and vendee: STATUTE OF FRAUDS. A parol contract for the purchase of real estate is not within our statute of frauds, if any portion of the purchase-money was paid or possession was taken by the vendee under the contract.

3. —— ERECTION OF IMPROVEMENTS: MORTGAGABLE INTEREST. Where a person erects improvements on real estate under a parol contract for its purchase, he thereby acquires an interest in the land to the extent of such improvements; and this interest is, under our statute, a mortgagable one.

*Appeal from Polk District Court.*

WEDNESDAY, OCTOBER 4.

ACTION in chancery. Decree for plaintiff; defendants appeal. The facts are set out in the opinion.

*Phillips, Gatch & Phillips* for the appellants.

*Withrow & Wright* for the appellee.

BECK, J. — This action is brought by plaintiff to quiet the title of a certain lot in the city of Des Moines, owned by him. The lot was purchased of one James Campbell, who conveyed it to plaintiff. Before this purchase, one Nathaniel Campbell had executed a mortgage upon it to defendant Butt, administrator. This mortgage had been foreclosed prior to the acquisition of the title of the lot by plaintiff, and the decree was unsatisfied. A special execution having been issued upon the decree for the sale of the lot, plaintiff instituted this proceeding to enjoin the sale and relieve the lot from the lien of the decree of mortgage. The ground of the relief claimed is, that the lot did not, at the time of the

execution of the mortgage, nor at any other time, belong to Nathaniel Campbell, but did, in fact, belong to James Campbell, plaintiff's grantor. The petition also sets out the fact, that plaintiff, in order to secure a portion of the purchase-money of said lot, executed to James Campbell a non-negotiable note and mortgage, which were assigned to defendants Houston and Busick. Plaintiff claims, in his petition, that, in case it be found the mortgage executed by Nathaniel Campbell, and the decree rendered thereon, are liens upon the lot, he is entitled to have the mortgage executed by him canceled, because the lot was conveyed to him by a warantee deed by James Campbell, and the note and mortgage executed by him was assigned to Houston and Busick, with full knowledge of his equities, for the purpose of defrauding him. The amount due upon this mortgage plaintiff paid into court to be disposed of by payment either to plaintiff or to Houston and Busick, as the court should finally determine the equities of the parties. James and Nathaniel Campbell, and Houston and Busick, were joined as defendants with Butt. Pending the proceeding Houston died, and his executors were substituted as defendants.

The court below decreed that the lot should be held free from the lien of the mortgage executed by Nathaniel Campbell, and the decree thereon, and that the money paid in by plaintiff, as due upon the mortgage executed by him, should be paid to Busick and the representatives of Houston. Butt appeals.

A proceeding brought by Houston and Busick to foreclose the mortgage executed by plaintiff was, upon consent of the parties, consolidated with the action.

The decision of this case involves, for the most part, only questions of fact arising upon the mortgage executed by Nathaniel Campbell, and the question whether it is or is not a lien as against plaintiff upon the lot in controversy.

The first question to be determined is this: Did

Nathaniel Campbell hold an interest in the lot that was conveyed by the mortgage executed by him? In our opinion the evidence demands that an affirmative answer be given this question.

Any extended discussion of the evidence would prove unprofitable. We will aim to state briefly the facts found in the record upon which our conclusions are found. In our opinion there was a verbal agreement between James and Nathaniel Campbell, who were brothers, at the time the lot was conveyed to James, that Nathaniel was to have one-half of it. Under this agreement he went into the possession of the lot or a part of it, and built a valuable house upon it, which he occupied himself or by his tenants for many years. We are quite well satisfied that Nathaniel paid James, in whole or in part, for the half of the lot, though the evidence upon this point is not direct, and great effort is made by the witnesses who are the interested parties, to cover up this fact. It is admitted by both James and Nathaniel that the last-named received the greater portion of the purchase-money paid by plaintiff, though it is explained upon the ground that he owned the house upon the lot.

Had plaintiff, at the time of his purchase, notice of Nathaniel's interest in the lot and of the mortgage? We think that the evidence clearly establishes that he had. The mortgage was upon record; of this fact plaintiff had absolute knowledge, through an abstract of the records which he saw; he was informed of Nathaniel's interest in the lot and of the existence of the mortgage, before he completed the purchase of the lot, by certain witnesses who testify to the fact. His admissions, made after the purchase, fully establish this fact. There are other facts disclosed in the record that tend strongly to the same conclusion, which it is unnecessary to mention.

Arriving at these conclusions, it follows that we must regard the decree of the district court as erroneous.

White v. Butt.

Thus far we agree in the conclusions of this opinion. I regret that, in the other views I shall express, I stand alone and dissent from the reasoning and conclusions of my brothers.

The plaintiff argues, that as he paid his money into court and the decree disposing of it has been executed, his property is discharged from liability under the mortgage. The plaintiff insists that upon the payment of the money into court it was in the custody of the law, and thereupon he was discharged from liability. That may be true as to his liability upon the mortgage executed by him, but so far as defendant Butt's rights are concerned, that is not the question to be considered. It is as to the liability of the property to satisfy the mortgage executed by Nathaniel Campbell. Butt's rights cannot be affected by the discharge of plaintiff from a debt he owed, with which Butt had nothing to do. Plaintiff insists that the act of defendant Butt in delaying his appeal until the decree was executed is a fraud upon him, and this court will not therefore disturb the decree of the court below. The plaintiff paid his money into court voluntarily; the law gives defendant one year in which to appeal, and during that time the decree may be executed if a supersedeas bond be not filed. I am unable to see why Butt should be required by the voluntary act of plaintiff to stay the order of the court disposing of his money. The money was paid in at plaintiff's own peril so far as Butt was concerned. The order disposing of the money was a secondary matter. The real and primary question was Butt's right to enforce his decree against the lot claimed by plaintiff. This the court decided he could not do. In this I find there is error. But plaintiff's argument goes to the extent that, because the secondary and consequential order for the distribution of the money has been executed, the error of the court in its decision upon the real and only question for adjudication in the case cannot be

corrected. I think the argument unsound. The position plaintiff finds himself in necessarily results from his own act. I do not think the law will relieve him at the expense of Butt. But properly he is not probably without a remedy. Certainly his grantor, James Campbell, is liable upon the warranty in the deed conveying the property. There may be other remedies provided by the law which will afford him protection from loss.

Reversed.

WRIGHT, J. — I am instructed, for the other members of the court, to say that, while they do not dissent from the conclusion reached in the foregoing opinion upon the merits of the case, they are still not prepared to concur in the order to which the whole opinion would lead. It is not necessary that we should express our agreement in all the reasoning used by Mr. Justice BECK, nor in all the conclusions stated by him, it being sufficient that we believe from the testimony that Nathaniel Campbell had at the time of his mortgage to Butt a mortgageable interest in the property, which interest is liable for the payment of the debt thereby secured, and that, too, at least to the extent of the unpaid purchase-money as against plaintiff.

All the parties, Houston's administrator and Busick, who claim the $600 note, with its interest, which at the time of bringing it into court, December 26, 1866, amounted to $660.69, James and Nathaniel Campbell, as also Butt's administrator, were before the court, however, and it was, as we view it, a contest between the creditors of James and Nathaniel as to which was entitled to this money. If it belonged to the creditors of James, it would of course be upon the principle that the brother Nathaniel had an interest in the property. If to those of Nathaniel, then it would be because he had such interest, and because, in equity, plaintiff and the creditors of James were bound to yield to the para-

White v. Butt.

mount rights of the creditors of the other brother. It was, in this attitude of the case, entirely competent for plaintiff to bring the money into court, leaving it to determine to which of these contending creditors it belonged. In doing this, he was guilty of no wrong, no carelessness, nor of any act which should affect his standing in a court of equity, nor prejudice his rights as against any of the creditors. He was not bound to keep this money in his own hands, permitting the interest to accumulate, but it was his right and privilege to tender and bring it with his petition, that it might go, according to law, to the party establishing the superior right to it. Aside from costs the amount thus tendered was within a few dollars of the whole amount of the Butt mortgage, and as we hold should have been applied toward its discharge.

The court, by its judgment of January 24, 1867, not only held the property to be exempt in plaintiff's hands from the mortgage of Nathaniel Campbell, but further, directed that the money in court should be paid over to the contesting creditors of James Busick and Houston's administrator, they being in court and by proper pleadings claiming this money. The money was paid over accordingly, and afterward, in May, 1868, Butt's administrator (the creditor of Nathaniel) gave notice of appeal to this court. Prior to this, neither the clerk nor the parties had any intimation of an intention to appeal, either by filing a supersedeas bond or otherwise. And now the question made and legitimately arising is, does the reversal of the cause upon the merits entitle appellant to enforce his mortgage against the lot purchased by plaintiff, or is he restricted to his remedy against the money and the parties into whose hands it has gone?

Very briefly our view is, that as plaintiff brought, as was his right, the money into court, and as the court adjudged it to belong to the creditors of James, and they obtained it (and this they might do certainly before appeal),

appellant cannot now demand that the property shall be held for the whole amount of his debt. It is true a party is allowed a year within which to appeal, and yet intervening circumstances may compel more speedy action. In principle it is not unlike an appeal from an order dissolving an attachment; and there it has been held, that if plaintiff would retain his lien, "he must appeal immediately within the legal sense." *Danforth & Co.* v. *Carter & May*, 4 Iowa, 230; and see *Danforth, Davis & Co.* v. *Rupert*, 11 id. 547, where the clerk (Rupert) had paid to the attachment defendant the money in his hands arising from the sale of the attached property before the appeal (for all the facts of which see the case in 4 Iowa, *supra*, and S. C., 1 id. 546), the appeal being taken within *four days* from the order directing the attachment, but of which the clerk had no intimation at the time of making such payment, and in which it was held that the clerk was not liable to the creditors, though they succeeded in obtaining a reversal of the order dissolving the attachment. In principle and reason that is this case. The clerk here had no discretion. These creditors of James Campbell were, by the judgment of the court, entitled to the money, and it was his duty to pay it to them upon demand, if the judgment was not appealed nor proceeding commenced to set it aside. Plaintiff could take no step to prevent this. To him it was a matter of indifference which of the creditors were entitled to this money. The contract was between them. He was not bound to see that this money remained with the clerk until the end of the year, lest an appeal might be prosecuted. The duty of diligence and action was upon the other creditor, the present appellant.

Appellant's remedy is, therefore, against the fund in the hands of the other creditors. Of course if this fund is not sufficient to pay appellant's debt, with the costs of foreclosure, the judgment should be so framed as to make

the undivided interest of Nathaniel Campbell in the lot
liable for the balance.

It is the opinion of the majority that the cause should
be reversed and remanded for judgment in accordance with
this opinion, the appellees, Houston's administrator and
Busick, paying the costs of this appeal.

And it is accordingly so ordered.

DAY, Ch. J. — At the December term, 1870, upon the
petition of Campbell, Busick and Houston's administrator,
2. VENDOR AND a rehearing of the foregoing cause was
VENDEE: stat-
ute of frauds. granted. We have carefully reviewed the
evidence and arguments of counsel, and feel constrained to
re-affirm the conclusion reached in the majority opinion.
The principal question made in the re-argument is as to
the mortgageable interest of Nathaniel Campbell. Under
the evidence, there can be no doubt that Nathaniel Camp-
bell took possession of part of the lot, under a contract for
its purchase. The testimony of Nathaniel Campbell upon
this branch of the case is as follows: "I had some talk
with James about the lot after he got the deed; probably
a week after; I told him I would like to have half the lot;
he said I could have it; I think he said I could go on and
put up my buildings on it; I took possession of the lot,
and put up my buildings under that agreement; I put the
buildings there right away after he bought the lot, about
ten years ago;     *     *     *     I should think the building
cost about $1100;     *     *     *     I was to have half the lot
from James at the same rate he paid West, when I paid
for it;     *     *     *     I and a man by the name of
Fletcher occupied the building after it was built, about
eighteen months; I then bought him out; I rented it
awhile to a man by the name of Haskins; then to Tyler
Kidwell, I think; then to James Brannon;     *     *     *
Brannon was running the property at the time the plaintiff
bought." Benjamin Bryant testified: "James Camp-

bell told me that Nathaniel Campbell had an interest in the property; before March, 1863, he told me that he bought the lot for Nathaniel; this was about the time he bought the lot, and while he was building on it; James told me the same thing again, that he bought the lot for Nathaniel." William Phillips testified: " James Campbell told me that Nathaniel owned the property, and just as soon as Nathaniel could sell, he would pay our judgment out of the proceeds, and that he himself was trying to assist him to make a sale, and requested me not to put any more costs on them, as Nathaniel was poor and didn't manage his affairs well, and he (James) wanted to see him save the property." Here we have established a parol contract for the purchase of half the lot, followed by taking possession and holding it for the period of ten years, and the making of improvements very much in excess of the entire value of the lot.

The contract established is such an one as a court of equity, under the provisions of our statute relative to . evidence, would enforce. Rev., § 4008.

Having thus possession of the lot, under a contract for its purchase, it is clear that if the purchaser had made any payments under his contract (and whether he did or not we do not propose now to consider), he would have acquired, to the extent at least of these payments, an interest in the lot. And it seems, to our minds, equally clear that, by the making of valuable improvements thereon, he acquired an equitable interest in the lot, to the extent of the value of the improvements. This point was directly ruled in the case of *Eastman* v. *Foster et al.*, 8 Metc. 26, in which it was held that " a building erected under an agreement with the owner of the soil, to convey the land at a certain price within a limited time, becomes a fixture, and constitutes a part of the realty. The interest of the builder is to obtain a title to the soil, and thus unite the fixture with

*3.—— erection of improvements: mortgageable interest.*

the fee. It is, therefore, an equitable interest in the realty, not a pure ownership of the buildings as chattels." Is this equitable interest, then, the subject of a mortgage? The statute itself seems to furnish the answer to this inquiry. Section 29, subdivision 8 of the Revision is as follows: " The word 'land,' and the phrases 'real estate' and 'real property' include lands, tenements and hereditaments, and all rights thereto, and interests therein, equitable as well as legal." And section 2209 provides:

"Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Then as real estate comprehends an equitable interest in lands, and a conveyance of *real estate* passes all the interest of the grantor, it follows that such conveyance passes the equitable interest of the grantor in the land conveyed. And a mortgage is a defeasible conveyance. It seems to us clear, therefore, that Nathaniel Campbell possessed a mortgageable interest in the lot. It must be admitted, however, that such interest, not being apparent of record, a subsequent *bona fide* purchaser from James Campbell, without notice of Nathaniel's claim, would take a title unaffected thereby. This brings us to consider in the next place the position which White occupies to this controversy. Before his purchase, White knew that Nathaniel Campbell was in possession of the property, and that he claimed the buildings.

Nathaniel Campbell testifies: " I think I went with White to see if Brannon would give possession if it was sold to White. This was a short time before the deed was made. I think I told White I wanted to sell the property to get money to rebuild my house. * * * I think I told him that I owned the buildings, and that they cost more than was asked for the house and lot together."

Having this knowledge of Nathaniel's ownership of the building, it was White's duty to ascertain the circumstances

of that ownership, especially since the abstract of title, which he examined before he made the purchase, showed that Nathaniel had executed a mortgage upon an undivided half of the lot.

And it would seem that he did acquire such knowledge as induced him to fortify himself against any claim which might be made under the mortgage, for he kept back $600 of the purchase-money, executing therefor an unnegotiable promissory note. William Phillips testifies, that plaintiff informed him that he knew of the judgment rendered upon this mortgage, that he had seen it on the abstract, and that he had kept back $600 to make himself secure.

It seems unnecessary to consider further, the remaining questions argued by counsel. They are all fully considered in the opinions heretofore announced. Mr. Justice BECK adheres to his former view. A decree will be entered as before directed.

Reversed.