## PHILLIPS v. BLAIR ET AL.

1. **Attorney:** FRAUD OF: ESTOPPEL. An attorney who procured a judgment for his client which he knew to be invalid, and afterwards suffered and assisted him to purchase the property upon execution sale under such void judgment, is estopped from afterward acquiring title to the same property from the judgment debtor.

2. ———: ———: ———: JUDGMENT DEBTOR. Whether or not the judgment debtor would be estopped to set up his title after the judicial sale, his conveyance to the attorney enures to the benefit of the latter's client and his grantees.

3. **Equity:** PURCHASER WITH NOTICE. A purchaser of land with notice of a right in another, is liable to the same extent and in the same manner as the person from whom he made the purchase.

4. ———: ———: ———. The purchaser of real estate takes the same charged with notice of the equities of the person in possession at the time of such purchase.

5. ———: ———: TITLE. The purchaser of real estate from an attorney whose title was obtained in fraud of his client, stands in the same position as his grantor, with respect to other claimants of title.

6. ———: ———: PLEADING. In our system of pleading, the facts constituting an estoppel *in pais*, in an action to recover real property, need not be specially pleaded, the averment of the facts constituting defendant's interest being sufficient.

7. **Practice:** EVIDENCE. Where plaintiff read in evidence a certified transcript of the record and judgment, with subsequent proceedings under execution, he will not be permitted afterward to question its competency or impeach its credit.

*Appeal from Boone District Court.*

MONDAY, JUNE 8.

THIS action is brought to recover seven and one-half acres of land, situated within the corporate limits of the town of Montana, in Boone county, Iowa. The plaintiff claims title derived from one M. C. Wood, in virtue of a quit claim deed from Wood to John A. Hull, of date July 31st, 1868, and a like conveyance from Hull to the plaintiff, dated September 15th, 1868.

The defendants, as an equitable defense, plead that on the 29th day of October, 1857, one John Grether obtained a judgment against said M. C. Wood, the grantor of plaintiff's grantor, for $96.00 and costs, upon a valid and meritorious cause of action, before one J. A. Wilson, then a justice of the peace of Boone county; that a transcript of said judgment was, on the 31st day of October, 1857, filed in the Clerk's office of the District Court of said county; that execution was issued thereon by said clerk on the 30th day of March, 1860, by virtue of which the sheriff of said county advertised and sold the land in controversy to said John Grether, the plaintiff in the execution, on the 28th day of April, 1860; that on the 6th day of May, 1861, a sheriff's deed for said land was duly executed and delivered to said Grether; that Grether and wife, by deed of general warranty, conveyed said land to J. J. Adams, January 2d, 1865, and Adams, by a like deed, conveyed the same to the defendant, John I. Blair, on the 20th day of January, 1865; and that Blair caused the premises to be platted and recorded as the town of Boone. The other defendants claim distinct portions of the premises as grantees of Blair.

Defendants also allege that said judgment has never in any manner, except by said sale of said land, been paid in whole or in part; that by reason of a defect in the service of the original notice in the action in which said judgment was rendered, the justice failed to acquire jurisdiction of the person of said Wood, rendering the judgment void, all of which was unknown to the defendants until about the 7th day of October,

1869; and they allege fraud on the part of the plaintiff and John A. Hull, his grantor, and that the plaintiff and his grantor are estopped from setting up title to the premises.

The cause was tried by the court, and a judgment rendered for the plaintiff. The defendants appeal. The further facts necessary to an understanding of the case are stated in the opinion.

*Isaac Cook* and *I. N. Kidder*, for appellants.

*C. H. Gatch* and *William Phillips*, for appellee.

MILLER, CH. J.—I. An opinion having been filed in this case at the October term, 1872, affirming the judgment of the court below, defendants filed a petition for a rehearing, which was granted, and the cause re-argued and again submitted, presenting questions not made in argument on the former hearing.

It is conceded that the judgment of the justice upon which the land was sold on execution is void, for want of service of the original notice upon the defendant Wood. The plaintiff, therefore, having a regular chain of conveyances from the judgment debtor, Wood, will be entitled to the land unless he or his grantors are estopped from asserting title thereto, as against the defendants.

The record shows that John Grether brought suit before J. A. Wilson, a Justice of the Peace of Boone county, against M. C. Wood and Eli Keeler, on a promissory note made by them for $87.05. An original notice was issued by the Justice October 19th, 1857; the written return on the same shows that it was placed in the hands of the sheriff for service; that he sent a copy of the notice by mail to Wood on the day he received the notice, directed to Swede Point, his place of residence; that on the return day of the notice, October 29, 1857, John A. Hull appeared as the plaintiff's attorney, (no appearance being made for defendant,) and moved for judgment on the note which was accordingly rendered. A transcript of this judgment was filed in the Clerk's office of the District Court, and execution issued thereon, upon which the land in controversy was sold by the sheriff and purchased by John Grether

on the 28th day of April, 1860, and a certificate of purchase then delivered to said John A. Hull, the attorney of the plaintiff in execution. In 1865, Blair purchased the land and caused it to be divided into lots, streets and alleys, and the plat thereof duly recorded. He has sold numerous lots to the other defendants, who, since their purchases, respectively, have built upon and otherwise improved the same, and are now residing thereon. Wood never paid any taxes on the land after the sheriff's sale. At the time of such sale the land was worth about ten dollars per acre; now it is worth in the aggregate, including the improvements, from $17,000 to $20,000. In 1868, the said John A. Hull purchased the land of Wood, knowing that it was claimed by Blair, "and if not platted as a part of the town of Boone, that it was very near to it."

It must be assumed that Hull as the attorney of Grether in the suit against Wood, knew when he moved for judgment

1. ATTORNEY: fraud of: estoppel. therein, that the original notice had not been served on the defendant in the action. It was his duty as such attorney to know whether the notice was properly served. The notice with the sheriff's return thereon was on file in the justice's office. With this knowledge he moved for and obtained a judgment for his client, which he knew to be of no validity. Upon this void judgment, the land was sold by the sheriff, and Hull's client, Grether, ignorant of any defect in the judgment, became the purchaser. Hull concealed from his client all knowledge of the defect in the judgment and suffered him to purchase the land and satisfy his judgment. Indeed upon the evidence there are strong grounds for concluding that Hull attended the sale and bid off the land himself as Grether's attorney. It is beyond question, that after the sale the sheriff delivered the certificate of purchase to him as such attorney. The relation of attorney and client existed at the time of the sale, and during the existence of that relation Hull suffered and assisted his client to purchase the land under this void judgment, knowing him to be ignorant of its invalidity; and which he, as Grether's attorney had procured to be rendered. The question now presented is, whether, under these circumstances, Hull could take advantage of this

knowledge, and acquire, as against, and to the prejudice of, his client, a title to this land for his own benefit, from the opposite party in the action? We think most clearly not. To allow him to do so, would open the door to, and sanction the perpetration of a gross fraud by the attorney upon his client. It would entirely destroy that just and necessary confidence which the client reposes, in not only the skill and learning, but also the integrity of his attorney.

The relation of attorney and client is one of peculiar trust and confidence. The client from necessity relies upon the ability and integrity of his attorney, and the latter is bound to act in perfect good faith toward his client. It cannot be, therefore, that an attorney, who obtains a judgment for his client, which he knows at the time to be void for want of service of notice on the defendant in the action, and also assists or suffers his client, to purchase the real property of such defendant on execution sale upon such judgment, in ignorance of the defect in the judgment, can afterwards take advantage of his own dereliction of duty by privately procuring, for his own benefit, a title to the same land, and set it up against his client. Equity will not sanction such bad faith on the part of a member of a class of persons appointed and intrusted by the law with the important duty of assisting in the administration of justice in the courts.

If an attorney may be allowed to acquire title for his own benefit under such circumstances, then no plaintiff would be safe in purchasing land sold on execution issued upon a judgment rendered in his favor. He would be insecure in relying upon the attorney, in whom the law says he may place confidence, in respect to the validity of the proceedings conducted by him. The attorney might purposely procure the rendition of a judgment, void for want of jurisdiction, so as to enable him subsequently to acquire the title to land, sold under such void judgment, from the judgment debtor, and thus speculate upon the professional confidence reposed in him by his client.

*Ringo v. Bimes*, 10 Pet., (U. S.) 269, was a case where the plaintiff was employed as an agent to assist in the division of a large tract of land between heirs. In the course of the

business he found that the title upon which they claimed the land was defective, indeed, that his clients had no title whatever to the land, but that it belonged to the State of Kentucky. He thereupon took the necessary steps to have the land surveyed and patented to himself. It was held by the Supreme Court of the United States, that the agent thus discovering a defect in the title of his principal and making use of such knowledge to acquire the title for himself, would be held as a trustee for his principal.

The case referred to, although not precisely similar to the one before us, decides the principle that an attorney or agent, obtaining, during such agency, knowledge of a defect in the title of his principal, cannot take advantage of such knowledge to acquire the title for his own benefit, and that where he does purchase the title he will be held a trustee for his principal. In the case cited the agent acquired the title while the relation of principal and agent subsisted. In the case before us the attorney acquired the title after the relation of attorney and client had ceased to exist. Whether this latter fact would change the rule, as stated in *Ringo v. Bimes*, we will not now inquire, since there are important facts in this case that did not exist in that. Here the defect in the title of the principal (Grether) was not only known to his attorney, and by him concealed from Grether, but the defect was caused by the culpable negligence or fraudulent intention of the attorney. The defect arose from a breach or palpable omission of duty on the part of the attorney, and to permit him afterwards, by negotiating a purchase from the enemy of his client, to profit by his own wrong, would be a violation of the first principles of "common honesty and fair dealing among men."

In *Beaupland v. McKeen*, 28 Penn. St., 124, a case very similar to the case before us, it was held that a party who encourages another to buy lands, acts as his agent after the purchase, adjusts the liens, pays the taxes, and receives a commission on the purchase money, cannot afterwards buy up and assert a better title to the land. He is estopped to deny the right in whose existence he induced the purchaser to confide. In Bitting & Waterman's Appeal, 17 Penn. St., 211, it was

held that where a person represents at sheriff's sale that a certain judgment was paid, he is bound by such statement, if incorrect and injurious, though he was not then the owner of the judgment, but became the purchaser of it afterwards. MR. JUSTICE LEWIS, in delivering the opinion of the court, says that "estoppels *in pais* are 'founded in law, honor and conscience,' when confined to their legitimate purposes of preventing one man from being injured by the wrongful act or misrepresentation of another." * * * "It was," says he, "certainly a mistake to suppose that Baldwin was not bound by his representation respecting the Bennett judgment, because he was not the owner of that judgment at the time, but because he purchased it afterwards. So far from this being a correct exposition of the law of estoppels, it is well established that they operate in cases of this kind not only upon present interests, but upon rights subsequently acquired. Indeed, it is apparent from the cases in the books, that the fountain which feeds them is chiefly supplied by subsequent acquisitions."

Without citing other similar cases, these establish the principle that Hull, under the facts of this case, was just as effectually estopped from purchasing the land in question for his own benefit, *after* he ceased to be Grether's attorney, as he would have been while that relation existed.

It is immaterial whether Wood, under the circumstances of the case, would or would not be estopped to set up his title 2.———: ———: after the sheriff's sale. Hull is estopped from ———: judg-ment-debtor. acquiring that title, for his own benefit, to the injury of his former client Grether, and those claiming under him; and although Wood may not have been estopped, his conveyance to Hull enured to the benefit of Grether and his grantees, thereby feeding the estoppel in Hull.

II. The next inquiry is whether the plaintiff is estopped as his grantor Hull would be, if he was asserting title against the defendants. The interest conferred upon a party by estoppel *in pais* being essentially equitable, a subsequent purchaser will not be bound without notice, either actual or constructive, but there is "no equitable doctrine better established than that a person who purchases an estate, although for a valuable

consideration, after notice of a prior equitable right, is not a purchaser in good faith, and will not be enabled, by getting the legal estate, to defeat such prior equitable interest, but will be held as a trustee, for the benefit of the person whose right he sought to defeat."

It may be laid down as a general rule, that a purchaser, with notice of a right in another is in equity liable, to the same extent, and in the same manner as the person from whom he made the purchase. See cases cited in notes to *Le Neve v. Le Neve*, 2 Lead. Cases in Eq. pp. 127, 98, 99, 2d. Am. Ed. See also, *Wilson v. Holcomb*, 13 Iowa 110; *Harris v. Stone*, 15 Id. 273; *Greither v. Alexander*, Id. 470.

> 3. EQUITY:
> purchaser
> without no-
> tice.

The doctrine is well settled in this State that the purchaser of real estate takes the same charged with notice of the equities of the person in possession at the time of such purchase. *Baldwin v. Thompson*, 15 Iowa, 505; *Moore v. Pierson*, 6 Id. 279; *Butch v. Lash*, 4 Id. 215; *Humphrey v. Moore*, 17 Id. 193; *Suiter v. Turner*, 10 Id. 517; *Dickey v. Lyon*, 19 Id. 544; *Hubbard v. Long et al.* 20 Id. 149; *Sears v. Munson et al.* 23 Id. 380; *Eli v. Gridley*, 27 Id. 376; *Van Orman v. Merrill*, Id. 476; *Harper v. Perry*, 28 Id. 57; *Thompson v. Miner*, 30 Id. 386; *Simmons v. Church*, 31 Id. 284; *Watrous & Snouffer v. Blair*, 32 Id. 58.

> 5. ——: ——.
> title.

At the time plaintiff purchased, the defendants were in the actual possession of the premises in controversy, so that he was charged with notice of their equities therein. Having such notice the plaintiff occupied the same position towards the defendants as did his grantor, Hull. The latter being estopped from setting up title to the premises against the defendants, the plaintiff is likewise estopped.

III. It is insisted by plaintiff's counsel, that the facts upon which it is claimed that John A. Hull was estopped from acquiring title for himself from Wood, are not pleaded in the answer of the defendants and therefore cannot be made available to defeat the plaintiff's title.

Under the general rules and principles of pleading provided in our statutes, this position would probably be correct, but

this is an action for the recovery of real property, for which the statute prescribes some rules which are peculiar to this kind of actions. It is enacted that in this class of actions "the petition need but state generally, without stating the facts constituting the right, that the plaintiff is entitled to the possession of the premises," etc., Rev. § 3570. And, "the answer of the defendant and each, if more than one, must set forth what part of the land he claims, and what interest he claims therein, *generally and without the facts constituting the right*, and if as tenant, the name and residence of his landlord, *and need state nothing more."* Section 3573. By the general rules of pleading the *facts* constituting the plaintiff's cause of action, or the defendant's defense must be stated in the pleading, but in this species of action a general averment of the right claimed, without a statement of the facts upon which it is intended to sustain such right, is sufficient. It is sufficient for the plaintiff to aver his right to the possession as owner in fee, and so also the defendant may claim possession based upon an allegation of ownership or as tenant, and any evidence tending to support such alleged right is admissible without further pleading. And an equitable title may be set up and may prevail against the legal title. *Kramer v. Conger,* 16 Iowa, 434, and cases cited on p. 436.

But independently of this, under the general principles of pleading, which govern in other actions, there are sufficient general allegations of fraud in the equitable defense, set up by defendants, to admit the facts upon which we base the estoppel of the plaintiff. See *Gray v. Earle,* 13 Iowa, 188. The judgment of the court below must be

REVERSED.

OPINION ON REHEARING.

After the filing of the foregoing opinion, and within the time allowed by law and the rules of court, the plaintiff filed a petition for a rehearing. It is insisted that the evidence upon which we find that John A. Hull, through whom appellee derived his title, was the attorney of Grether in obtaining the judgment before the justice on which the land was sold and

purchased at sheriff's sale by Grether, is not competent to prove that fact. It is said that "the opinion rests wholly upon the assumption that John A. Hull was present as the attorney of Grether before the justice of the peace as recited in the void judgment." We do not so understand the opinion, nor do we regard it as necessary that he should have been present when the judgment was entered. We rest the opinion on the fact that Hull was the attorney of Grether in the procurement of the judgment, and in collecting the amount of the judgment on execution by a sale of the land in controversy, at which his client, Grether, became the purchaser in satisfaction of the judgment, ignorant of its invalidity, while Hull, his attorney, had knowledge thereof, or was culpably negligent in not knowing of it, and in either case is estopped from afterwards buying up and asserting, as against his client, a better title to the land.

Now, in regard to the competency of the evidence to prove that Hull was the attorney of Grether in procuring the judg-

7. PRACTICE; ment, etc. The incompetency of this evidence is
evidence. claimed on the ground that the judgment was rendered without proper notice, and therefore void, and that this void judgment is not competent to prove the fact of Hull's attorneyship. Upon turning to the record we find that "the plaintiff offered and read in evidence a certified transcript of the record in the case of *John Grether v. M. C. Wood et al.*, being transcript of record and judgment, upon which sheriff's deed to John Grether, offered in evidence by defendants, was based, including judgment, docket entry of justice of the peace, and transcript filed in this court, with judgment docket entries, and execution and sheriff's return thereon," then follows the documents thus offered in evidence.

After thus offering this evidence himself it does not lie in plaintiff's mouth to say that it is not competent. If a party has full knowledge of the incompetency of a witness, he will not be permitted to examine him and afterwards object to his competency, if he should dislike his testimony. 1 Greenleaf's Ev., § 421, and cases cited in notes. And when a party offers a witness he will not be allowed afterwards to impeach

his credibility. Ibid. § 442, and cases cited in notes. So also, with documentary evidence, when a party offers it in proof of his case, he thereby affirms its competency and credibility. Plaintiff knew the character of this evidence at the time he offered it, as fully as he does now, and having offered it, as his witness, so to speak, he will not be permitted to question its competency or impeach its credit, especially for the first time on appeal in this court. These principles are elementary and require no further discussion. He offered the transcript of the judgment to show, by a recital therein, that there was no legal notice given to the defendants therein, and that, therefore, the judgment was invalid. By offering it in evidence, he asserted its competency to prove the recited facts therein. He will not be allowed to say that it is competent to prove one of the recited facts and none others. It may be competent to prove the facts it recites, although it thereby appears that the judgment is void.

Again, the evidence of Hull having been attorney of Grether is derived from the sheriff's return on the execution, as well as from the transcript of the judgment. This evidence, (the execution and return thereon,) was also offered by the plaintiff.

In respect to the question of pleading, urged in the petition for rehearing, we are satisfied with the correctness of the views expressed in the former opinion, and do not deem it necessary to add to what we have there said on that point. The petition for rehearing will be

OVERRULED.