ELIZABETH WENDLING, Administratrix, Appellant, v. C. H. JENNISCH, Appellee.

1. **Evidence:** BOOKS OF ACCOUNT: IMPEACHMENT. Where in an action for an accounting between partners, the defendant, in support of a claim for profits which he alleged had not been credited to him, introduced in evidence his copartner's private books of account, *held,* that he could not afterwards question their credibility or competency, nor repudiate portions thereof which were unfavorable to his claim.

2. **Partnership:** ACCOUNTING: INTEREST. A partner who, from time to time, has drawn out of the firm an amount in excess of his share in the profits, is not liable to his copartner for interest upon such overdrafts, in the absence of an agreement to that effect, except upon balances ascertained upon an accounting and settlement between the partners.

*Appeal from Winnesheik District Court.*—HON. L. E. FELLOWS, Judge.

FRIDAY, MAY 20, 1892.

ACTION for the dissolution of a partnership and for an accounting. The defendant pleads, in substance, a general denial. Upon the trial there was a finding and decree for the defendant, from which the plaintiff appeals.—*Reversed.*

*G. R. Willett*, for appellant.

*L. Bullis*, for appellee.

KINNE, J.—I. It appears from the evidence that in the year 1859 or 1860, the plaintiff's intestate, G. L. Wendling, and the defendant, C. H. Jennisch, entered into a business arrangement, not in writing, by the terms of which the plaintiff's intestate was to furnish the material and labor for the woodwork, painting, and upholstering of carriages, buggies, wagons, cutters and sleighs. The defendant was to furnish the material and labor for the ironwork for said vehicles. The proceeds of the product of their joint labor, when sold, was, it seems, to be divided between them in proportion to what each had put into each of said articles. They each carried on their respective branches of said business, in their own separate shops, and also in their respective shops carried on the business of repairing and other business, in which there was no joint interest. They continued business under this arrangement until in 1882 or 1883, at about which time disagreements arose between the parties. Of the articles manufactured under their agreement the plaintiff's intestate and the defendant from time to time made sales for cash and on credit. Sometimes the credit was in the form of an open account, sometimes the note of the purchaser was taken, and often they took the notes of third persons. Sometimes they took in exchange for new work old carriages, wagons and cutters, which, after being repaired, if repairs were required, were sold by the parties in the manner above mentioned. Each of the parties made collections from time to time. No joint books were kept by the parties, but each party kept accounts in an informal manner. The plaintiff's intestate kept the most complete accounts. It appears that settlements were had between the parties from time

to time prior to October, 1871, but the full particulars
thereof are not given.   It seems also that certain trans-
actions were, prior to said time, settled by the parties,.
but no record thereof was made.   On October 24, 1871,
it is conceded that a settlement was had between the
parties, the full extent of which is a matter in dispute.
All of the settlements referred to seem to have been
made in this wise:    Each of the parties placed a sum of
money on the table, and as they went over the items
they passed the money "from one to the other as the
balances vibrated back and forth."   The plaintiff's
intestate claimed that at the time of these settlements
he had his book before him; and in the presence of
the defendant he marked the items settled with a "paid"
mark, which he describes.   Sometimes he took notes in
lieu of money on these settlements.   The defendant
says that at the settlement in 1871 the plaintiff's intes-
tate "read *verbatim*" to him from his book of work
sold, and that he took it down, after which they passed
the money back and forth as before stated, and, as
each item was settled, he marked it "Rec." opposite
the item, and no items except those so marked were
then settled.   Some, if not all, the matters not included
in the settlement of October 24, 1871, including work
sold between that date and January 1, 1872, were
settled from time to time prior to January 1, 1872.   In
1884, and after this suit was begun, an attempt was
made by the parties to adjust these matters, which,
while it was never fully completed, seems, with few excep-
tions referring to credits, to have been mutually acceded
to as being correct as far as it went.   One of these
exceptions is a claim made by the defendant for "prof-
its;" that is, he claims there should be added to each
item of credit for ironing an additional sum, which he
claims as profits.   The plaintiff's intestate denies this
claim, and insists that each item of credit for both wood
and iron work included all the profits to which each

was entitled. Another claim made by the defendant is for interest on yearly balances found due him on this accounting, also for interest on notes taken by the plaintiff's intestate, and which he claims has not been accounted for. The defendant also contends that he is not bound by the adjustment made in 1884.

II. The defendant's counsel in argument severely censures the decedent, as well as the plaintiff, on account of the disappearance of certain books; also because of the mutilation of a book. We have read the testimony relating thereto with care, and we are unable to find in the record any grounds for believing that the intestate or the plaintiff acted in bad faith regarding said books, or purposely mutilated them, or caused their disappearance. This much, we think, should be said in justice to the parties and their counsel.

III. The defendant claims over two thousand dollars as profits on his ironwork, which he contends

1. EVIDENCE: books of account: impeachment.

should be credited on his account. A careful consideration of all the evidence satisfies us that this claim should be rejected. There is no evidence, except the testimony of the defendant himself, which tends to show that he is entitled to have this sum placed to his credit. While the defendant undertakes in his testimony to show that he was to have profits on his work over and above the sum credited him for ironing, such claim is not sustained. When the parties attempted to settle in 1884, after this suit was commenced, and the several items of their accounts were discussed and agreed upon, there was no claim whatever made by the defendant that the amounts he gave as representing the value of his work did not include all profits to which he was entitled. In nearly every instance in this adjustment the defendant fixed his own prices on his own work, and the prices then fixed were at the time agreed to by the defendant as

being correct. Again, the defendant himself put in evidence the plaintiff's book containing a list of the work done, and the amounts credited to the defendant for ironing. It is an elementary rule of law that if a party, having full knowledge of the incompetency of a witness, examine him, he cannot afterwards be heard to object to his competency if the testimony proves unsatisfactory to him. 1 Greenleaf on Evidence, section 421, and notes. Nor will he, after offering a witness, be allowed to impeach his credibility. Id. section 442, and notes. Having introduced this account of the plaintiff, he cannot now question its credibility or competency. It is not his province, under such circumstances, to accept the benefit of that part of the evidence favorable to him and repudiate the balance. *Phillips v. Blair*, 38 Iowa, 658. Not only this, but the testator was put on the stand by the defendant, and testified that the defendant fixed the several amounts for ironing, and stated that said amounts represented the interest he had in the whole price obtained for the work. Furthermore, the defendant's own testimony, when all considered, shows that the sums he put in for his ironing included all profits.

IV. The defendant contends that he is entitled to several thousand dollars interest on yearly balances of the account between him and the intestate, as well as a large amount of other interest.

2. PARTNERSHIP: accounting: interest.

It seems to be conceded in the appellee's argument that, if the intestate had fully paid the defendant, no interest should be charged the plaintiff's intestate. As to the interest, other than that claimed on yearly balances, we have allowed it where it appears it was clearly the intention of the parties that it should be credited to the defendant. It appears that the defendant has received full pay for his ironing, and, if this be so, he has no claim for interest on notes which the plaintiff's intestate may have taken for any balances

that may have been due to him on the work sold. Even if we should be in error as to our view of the evidence, still there is nothing in the facts or situation of the parties in this case that would enable the defendant as a matter of right to claim interest in excess of what we have allowed.

The defendant's claim for interest on yearly balances cannot be allowed. We cannot accede to the correctness of the rule contended for by the defendant, that one partner, drawing out of the firm more than his share, is in the absence of an agreement or understanding to that effect, chargeable with interest thereon, when, as in this case, there had been no full settlement of the firm business since 1871, and no balances ascertained and found to be due by an accounting had between the partners. That question has been decided at this May term of court adverse to the defendant. See *Kemmerer v. Kemmerer, ante* page 193. In the attempted settlement of 1884 no interest was computed by the parties on yearly balances, nor does it appear to have been mentioned,—a fact that should go far towards showing that neither party intended that such a charge should be made. Even if the law should be conceded to be as the defendant claims, still he could not complain in this case, as the yearly balances, as arrived at by us, appear in almost every instance to have been against the defendant; and, if such interest was computed, it would inure to the benefit of the plaintiff.

V. It appears from all the testimony that all matters between the parties prior to October 24, 1871, were then settled, or afterwards adjusted, and at that time a balance was found due the plaintiff's intestate. Using this balance as a basis for our computation, and allowing all items conceded by both parties to be correct, we have examined the testimony as to the items in dispute. Our accounting shows that there is due the plaintiff seven hundred and twelve dollars and thirty-

eight cents. In arriving at this result we have, we think, properly assumed that both parties should be concluded by their agreement in 1884 as to the items therein contained, and then conceded to be correct. The judgment of the district court will be set aside and judgment will be entered in this court against the defendant for seven hundred and twelve dollars and thirty-eight cents, to draw six per cent. interest from this date, and the costs in this court and in the district court. All notes, accounts, and personal property belonging to the firm of Jennisch & Wendling will be taken possession of by the plaintiff, and become the property of the estate which she represents. REVERSED.