T. E. BENBOW, Appellee, v. J. A. BOYER *et al.*, Appellant.

1. **Homestead:** ABANDONMENT: EVIDENCE. Where the owner of a homestead left it to go to a distant state for the benefit of his health, and to visit his children, taking with him only his ordinary wearing apparel, and leaving his household goods upon the premises, with the intention of returning thereto, and during his absence frequently expressed himself as intending to return, but after about three years he voted at an election in the state to which he had gone, and about a year thereafter he directed his household goods to be sold at public auction, *held,* that the premises retained their homestead character, at least until the time that the owner voted in the state to which he had gone.

2. ———: JUDGMENT: LIEN: DURATION: SALE PENDING SUSPENSION
OF LIEN. By the expiration of ten years a judgment, held by the
defendants against the owner of a homestead, ceased to be a lien
while said premises still retained .their homestead character, and
such lien was not revived by levy until after the homestead right
became forfeited, and the property had been sold by the owner.
*Held,* that the grantee was entitled to hold the property free from the
lien of the judgment.

*Appeal from Hardin District Court.*—HON. D. R.
HINDMAN, Judge.

TUESDAY, OCTOBER 17, 1893.

ACTION in equity to enjoin the defendants from
selling certain real estate. From a judgment and
decree for the plaintiff. The defendants appeal.—
*Affirmed.*

*Spurrier & Dowell* and *C. L. Hays*, for appellants.

*C. E. Albrook*, for appellee.

KINNE, J.—This action was brought to restrain
the defendants from selling the northeast quarter of
the northeast quarter of section 27, township 86,
range 20, west, fifth P. M., in Hardin county, Iowa,
under an execution issued out of the office of the clerk
of the district of said county on March 21, 1891, on a
certain judgment rendered October 10, 1878, against
one C. Benbow. An injunction was issued restraining
the sale. The claims of the parties may be thus briefly
stated: The plaintiff claims that the real estate in
question was the homestead of C. Benbow; that the
judgment was never a lien upon the land; that there
was an agreement between the plaintiff and the defend-
ant, in writing, that the latter, for two hundred and ten
dollars, would cancel his judgment; that the plaintiff
became the purchaser of the property from C. Benbow
prior to the levy of the appellants' execution thereon.

The defendants claim that the plaintiff's grantor, C. Benbow, abandoned the homestead; that this judgment became a lien thereon by levy of the execution; that no contract to cancel the defendants' judgment was made; that the defendants were delayed in the levy of their execution by the fraudulent representations of the plaintiff. We need not set out the pleadings. Other facts fully appear in this opinion. The court entered a decree and judgment making the injunction perpetual, declaring that the judgment was not a lien upon the premises, and ordering the two hundred and ten dollars, which the plaintiff had paid into the hands of the clerk of the court, paid over to the defendants, on their agreement to receive the same for their judgment.

I. Touching the homestead claim, we find the following facts to be established by the testimony: In 1865, Carver Benbow, the father of the plaintiff, purchased the land in controversy, moved upon it with his family, and continuously occupied it as his homestead until May, 1887. At that time he started west, to visit his children, and for the benefit of his health, taking with him his ordinary wearing apparel, and leaving on the premises, and in his dwelling house, his household goods. These goods remained there until March 10, 1891, when they were disposed of at public sale at the request of the owner of them. He left his home for a temporary purpose, and with the intention of returning to it. We think the evidence abundantly establishes the fact that this land retained its homestead character, at least until the year 1890. In that year it appears that C. Benbow voted in the state of Washington. Prior to that time there was no evidence sufficient to show an abandonment of the homestead. He had been absent about three years. He had always expressed his intention of returning to his homestead. He had left all his house-

1. Homestead: abandonment: evidence.

hold goods in his dwelling house, and up to this time, at least, we think it clearly appears he had a fixed and abiding intention to return to his homestead. The fact of his going to a distant state, and remaining there for three years, and pursuing his occupation while there, can not be held to show an abandonment of his homestead, in view of his purpose in going, his leaving his household goods, and his often expressed intention to return. True, it is possible that the expression of his intention alone would not show that he had not abandoned the homestead, but when such expressed intentions are not in conflict with his acts, and are consistent with the accomplishment of his purpose in going away, and there is nothing to show any change in his intentions, they should be accorded weight in determining whether there was an abandonment of the homestead. The removal having been for a temporary purpose, with the intention of returning, it may well be presumed that such intent continued at least up to the spring of 1890, when C. Benbow voted in the state of Washington. Cases of abandonment depend upon the facts peculiar to each case, and, as no two cases are exactly alike, it is not profitable to enter into a discussion of the adjudicated cases. The following, among other cases, however, tend to support our holding: *Fyffe v. Beers*, 18 Iowa, 4; *Bradshaw v. Hurst*, 57 Iowa, 745; *Shirland v. Union Nat. Bank*, 65 Iowa, 96, 100; *Boot v. Brewster*, 75 Iowa, 631, 632; *Jones v. Blumenstein*, 77 Iowa, 361, 365. Prior, then, to the spring of 1890, there was no abandonment of the homestead.

II. The defendants' judgment was rendered in October, 1878. At that time, and for years afterwards, C. Benbow was in the actual occupancy of the premises as a homestead. The premises remained impressed with the homestead character until at least 1890,

2. ——: judgment: lien: duration: sale pending suspension of lien.

Under the statute, Code, section 2882, the judgment would cease to be a lien upon real estate in October, 1888. It follows that the judgment could only be made a lien upon the real estate by levy of an execution thereon, after the premises ceased to be a homestead, and while the title thereto remained in C. Benbow. The evidence satisfies us that the plaintiff purchased the premises early in March, 1891, and put his tenant in actual possession thereof. The said purchase was consummated prior to the time the defendants levied their execution on the land. It clearly appears that the land was purchased by the plaintiff at least two weeks prior to the defendants' levy, and possession was also taken prior to the levy. When the levy was made C. Benbow had no interest in the land, and hence the levy was ineffectual. It is immaterial that the deed from C. Benbow to the plaintiff was not acknowledged or recorded until after the date of the levy. The trade had been made, the consideration, in part, at least, paid, and the plaintiff was in possession. Under such circumstances, a purchaser is bound at his peril to take notice of the title and interest of the one in possession of the land. *Sears v. Munson*, 23 Iowa, 380, 390; *Eli v. Gridley*, 27 Iowa, 376, 377; *Harper v. Perry*, 28 Iowa, 57; *White v. Butt*, 32 Iowa, 335; *Phillips v. Blair*, 38 Iowa, 649.

III. The defendants' claim of fraud is not established. We are satisfied that the court below properly found that the defendants entered into a contract with the plaintiff to cancel their judgment for two hundred and ten dollars, and that the defendants entered into said arrangement, if not with full knowledge of all the facts, after taking ample time to fully acquaint themselves therewith, and that no fraud was practiced upon them by the plaintiff. In any view of the case, the plaintiff was entitled to a decree.

The judgment below must be AFFIRMED.