DORA GILMORE *v.* SARAH E. BROWN ET AL.

[46 South., 840.]

1. HOMESTEADS. *Construction of exemption laws.*

Homestead exemption laws are to be liberally construed in favor of exemptionist.

2. SAME. *Abandonment. Evidence. Voting and holding office elsewhere.*

The fact that the owner of a country homestead voted and held office in a village, to which his removal was claimed to have been temporary, is not conclusive evidence of an abandonment of the homestead.

3. SAME. *Intent to return  Case.*

The owner of a country homestead may purchase a dwelling house in a village, move his family thereto for the purpose of educatng his children, qualify there as a municipal elector and hold a municipal office, without forfeiting his right to claim the country home as exempt, if he keeps actual possession of it, in person or by some member of his family, cultivates it every year, never ceases to claim it as his homestead and always intends to return to it as soon as the object for which he removes to the village has been accomplished.

FROM the chancery court of Lafayette County.

HON. ISAAC T. BLOUNT, Chancellor.

Mrs. Gilmore, appellant, was complainant in the court below; Mrs. Brown and others, appellees, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court.

The facts are stated in the opinion of the court.

*Mayes & Longstreet* and *Kimbrough & Thomison,* for appellant.

Ceasing to reside on homestead renders it liable, unless the removal be temporary, by reason of some casualty or necessity and with the purpose of speedily re-occupying it. Code 1906, § 2157.

"Necessity and Casualty" defined. *Thompson v. Tillotson,* 56 Miss., 36. The length of time of debtor's absence rebuts the idea of *animus revertendi* and shows an abandonment of the homestead. 2 Parsons on Contracts, 580.

Removal to Lafayette Springs and voting in the municipal elections negative an intention speedily to return as required by Code 1906, § 2157; 2 Parsons on Contracts, 579 and note 2; *Hairston* v. *Hairston,* 27 Miss., 704; *Alston* v. *Newcomer,* 42 Miss., 186.

The intent to re-occupy can have no influence on the question of the existence of the casualty or necessity constituting cause or removal. Both the intent to speedily re-occupy and cause of removal must exist to protect the homestead. If there is no sufficient cause of removal, proof of intent to re-occupy is immaterial. *Moore* v. *Bradford,* 70 Miss., 74, 11 South., 630.

The acquisition of the homestead in Lafayette Springs was conclusive evidence of the abandonment of the one in the country. Thompson on Homesteads, § 279.

It is clear that when Brown acquired the village home he lost the one in the country, and he had not re-acquired it at the time of his death. *Ross* v. *Porter,* 72 Miss., 361, 16 South., 906.

The widow has abandoned the lot in Lafayette Springs, occupied as a homestead at the time of the death of Brown, it is therefore subject to partition, she "no longer occupies and uses it." Code 1906, § 1659.

It is admitted by the pleadings that the lot in Lafayette Springs is subject to sale.

The home as it existed in the lifetime of the husband is preserved to the widow. *Moody* v. *Moody,* 86 Miss., 329, 38 South., 322.

The widow is not entitled to the one hundred and sixty acre tract as a homestead exemption, there was an abandonment of this by the husband who owned the land and who, as the head of the family, was entitled to select the domicile. The removal of this was not "temporary and by reason of some casualty or necessity" within the protection of the statute. *Salter* v. *Embrey,* 18 South, 373.

*Falkner & Russell,* for appellees.

There was never any intention on the part of deceased to abandon the homestead that he undisputably held when he first came to Lafayette County. His absence from the same was only temporary with the intent to speedily return and occupy. He moved to a small village only one mile away for the avowed purpose of educating his children—the roads from his homestead to the village were very muddy and disagreeable in winter and hence made it the more difficult for his children to get to school. This removal is allowed under the term "necessity" as defined in *Thompson* v. *Tillotson,* 56 Miss., 36. Brown stated repeatedly, and it was well understood by all his family, that his removal to the village was only temporary for the above mentioned purpose, and that he expected to return as soon as this was accomplished, and he continued, after his removal to the village, to cultivate the lands on his rural homestead; his children also continued to assist him in the cultivation of this farm, as they had done before leaving the same. This continued each

year while living in the village. No one ever lived on the rural homestead during their absence in the village except some member of his own family. The entire farm was either cultivated by him in person or under his exclusive management and control, and, that not by strangers, but by members of his own family. *Ross* v. *Porter,* 72 Miss., 365, 16 South., 906; *Moore* v. *Bradford,* 70 Miss., 74; 11 South., 630; *King* v. *Sturges,* 56 Miss., 606; *Culp* v. *Agee,* 79 Miss., 503, 31 South., 1; *Campbell* v. *Adair,* 45 Miss., 170.

It was a question of fact, pure and simple, and the chancery court resolved the same in favor of appellees and the finding is final.

A verdict will not be disturbed unless it is manifest from the whole record that it is clearly wrong unless misdirection or other apparent error might have produced it. *McCallum* v. *Puryear,* 48 Miss., 420.

CALHOON, J., delivered the opinion of the court.

This is a controversy as to whether the piece of land claimed as a homestead was or was not a homestead. If it was not, then undoubtedly it was liable in this proceeding to be partited among the heirs of W. B. Brown. Mrs. Gilmore was one of these heirs. She files a bill for partition, and avers that the homestead was in the village of Lafayette Springs, and occupied as such by W. B. Brown when he died. She avers this village property was abandoned by the widow, one of the appellees, Mrs. Sarah E. Brown. Complainant prays alternatively that, if it be held that the widow is entitled to hold this village property, then the decree will order partition of the country property, of which it is averred the widow is in possession. The learned chancellor below, on the facts, found that the one hundred and sixty acres of the country tract as the real homestead had never been abandoned as such by him, but that he and his family had taken up their abode in the village of Lafayette Springs only temporarily, and that no abandonment was ever

made of the country exemption; that the deceased every year, in person and by members of his family, worked some of the country property; that although the deceased had purchased the village home, and had taken his family there, he did it simply for the purpose of giving school facilities to his children.

We think it sufficiently shown that there never was any purpose on the part of the deceased to abandon his country homestead, and that his only object in moving to the village was to furnish school facilities to his children and that his design was at the start, and continuously was, to return to his country home as soon as his object was attained. He supervised his homestead, had always one of his family there, and never ceased to assert that it was his homestead. The difficulty in this case is that Brown, while residing at Lafayette Springs, became a qualified voter there and was elected to and held the office of alderman of that village at a time during the two or three years that he had his actual residence there. It will be noted that by Code 1906, § 2146, real estate exemption is given to every citizen of this state, being a householder and having a family entitling him to hold the exemption, being the land and buildings owned and occupied as a residence by him, not to exceed one hundred and sixty acres, with a different exemption in cities, towns and villages. The universal rule as to exemptions is a liberal construction in favor of the citizen head of a family. It would never be held that a householder in the country, who left his homestead temporarily in order to educate his children and with the purpose always to return to his country home, would forfeit his exemption. Being in the village and with such purpose, it has been often held that his voting in village elections and holding office there would not necessarily be an abandonment of the original homestead. *Corey* v. *Schuster,* 44 Neb., 269, 62 N. W., 470; *Mallard* v. *First National Bank,* 40 Neb., 784, 59 N. W., 511; *Dennis* v. *Omaha Nat. Bank,* 19 Neb., 675, 28 N. W., 512; *Benbow* v. *Boyer,* 89 Iowa, 494, 56 N. W., 544; *Porter* v. *Chapman,* 65 Cal., 365, 4 Pac., 237; *Campbell* v. *Potter,* 29

S. W., 139, 16 Ky. Law. Rep., 535. These cases are taken from 25 Century Digest, cols. 2544, 2545.

All these cases hold that the proof of these facts, while competent and very persuasive evidence, is not conclusive of the abandonment of a homestead, but is to be considered in determining whether the homestead was left temporarily or permanently, which is the matter to be determined at last. In 15 Am. & Eng. Enc. of Law (2d ed.), 647, in speaking of this matter, the text says: "But this presumption is not conclusive. If the attendant circumstances show that the new home was intended to be used only as a temporay residence, there will be no abandonment." And in note 4 to the text are cited cases from Arkansas and Texas. In 21 Cyc. 601, the text says: "If the debtor removes from the home property for the purpose of obtaining better educational facilities for his children, his absence is not regarded as an abandonment, if the removal is not to be permanent"—citing divers cases from Kentucky, a case from Missouri, divers cases from Texas, one case from Wisconsin, and also citing the case of *Campbell* v. *Adair*, 45 Miss., 170. We adopt the reasoning and conclusion of these cases. They are to be differentiated from *Thompson* v. *Tillotson*, 56 Miss., 36, where the homesteader removed from his place in January, 1875, and "had not returned, nor, so far as the record indicates, did he propose to return to it, when the final decree passed in 1877." In short, in that case there was no definite purpose of returning to the homestead.

*Affirmed.*