HOLSOMBACK *v.* SLAUGHTER.

(Division B.   Jan. 4, 1937.   Suggestion of Error Overruled, Feb. 1, 1937.)

[171 So. 542.   No. 32448.]

554

Reily & Parker and R. M. Bourdeaux, all of Meridian, for appellant.

**J. C. Floyd**, of Meridian, for appellee.

Argued orally by **R. M. Bourdeaux,** for appellant.

**Ethridge, P. J.,** delivered the opinion of the court.

Mrs. Mackie Slaughter, who, in her lifetime, owned certain property in Meridian, Miss., lived on a certain piece of property upon which a deed of trust, which had been executed, was foreclosed, and the mortgagee bought same at the foreclosure sale. Thereupon, she moved into the house involved in this controversy and filed a homestead declaration thereto. She lived in this house with her two sons, both above the age of twenty-one years, one of whom was at college. She also had an adult daughter who was mentally afflicted and in the insane hospital, but supported there by her mother, who also reserved a room in her house for said daughter.

On December 17, 1932, a judgment was rendered against her in favor of the appellant, and during the month of April, 1934, Mrs. Mackie Slaughter moved into the house in controversy, filing the homestead declaration on May 25, 1934, and died a few days later. After her death, execution was levied upon the homestead property. Prior to her death, and while she was living

in the house in controversy, she executed a deed thereto to her son W. J. Slaughter, and she also willed same to him.

W. J. Slaughter sued out an injunction to restrain the appellant from selling the property under the execution, claiming that it was a homestead and thereby exempt from execution, and had descended to him free from his mother's debts.

The chancellor heard the case and held that, Mrs. Mackie Slaughter being the head of a family, the property was exempt.

The proof shows that Mrs. Mackie Slaughter supported all of her children; that W. J. Slaughter, then being in college, lived with her; and that she supported another adult son, who had been married and, after being divorced, came to live with her, whom she characterized in her will as a poor business man.

The only question for decision is whether or not Mrs. Mackie Slaughter, under the circumstances, was a householder, the head of a family.

The exemption laws of this state are liberally construed in favor of exemptionists. Bank of Gulfport v. O'Neal, 86 Miss. 45, 38 So. 630; Gilmore v. Brown, 93 Miss. 63, 46 So. 840; United States F. & G. Co. v. Holt, 148 Miss. 885, 114 So. 818; Breland v. Parker, 150 Miss. 476, 116 So. 879; Abernethy v. Savage, 159 Miss. 506, 132 So. 553; Adams v. Strong, 171 Miss. 510, 158 So. 204. In Roberts v. Thomas, 94 Miss. 219, 48 So. 408, 136 Am. St. Rep. 573, it was held that a widower, upon moving to this state, does not forfeit a right to acquire a homestead here by temporarily leaving his children in school at the place from whence he came. The court there said that: "The sole question is whether Thomas had a right to hold this house and lot as a homestead against a purchaser at an execution sale. . . . It is difficult to see how the case can be different merely because the boys, who are temporarily absent at school, have never

actually and physically resided in the home, provided there is always present their intention to do so as soon as their school days are over."

In Pearson v. Miller, 71 Miss. 379, 14 So. 731, 42 Am. St. Rep. 470, the court held that an unmarried man, occupying alone the back room of his law office as a sleeping apartment, taking his meals at a hotel, who provides for and supports an aged and dependent grandfather, with a servant, living in a house owned by the defendant, some hundred feet from his office, the meals for the two being furnished from a restaurant, is not entitled to the exemption provided by law. The court there defined a "householder" as "a person owning or holding and occupying a house, and a 'family' may be defined to be a collection of persons living together under one head. A householder having a family may be characterized as the head of a family occupying a house, and living together in one domestic establishment. He need not be a husband or a father, nor need the family over which he has headship and control be kept together, as a unit, continuously. The education of children, the illness of any members of the family, requiring change of climate, or mere absence, however, protracted, if only temporary, for pleasure or recreation, will not, of course, dissolve the family relationship, or break up the household."

In Cox v. Martin, 75 Miss. 229, 21 So. 611, 36 L. R. A. 800, 65 Am. St. Rep. 604, the court held that an "unmarried man is not the head of a family, within the law of exemptions of property from legal process, because his adult son, who is able-bodied and capable of earning a support, lives with him," citing Hill v. Franklin, 54 Miss. 632.

Under the laws of this state, the obligation of parents to maintain dependent members of their families, who are unable to care for themselves, is established by statute (Code 1930, sec. 5706). In the Homestead Law, a

majority of the authorities hold that the legal obligation is not necessarily a condition of the exemption, but a moral obligation is sufficient to constitute an exemption.

In the case at bar, the fact that the daughter was temporarily in the insane hospital did not affect the mother's right nor relieve her of the duty of caring for her afflicted daughter.

We are also of the opinion that it is a natural or moral duty of parents to give all of their children such education as may be necessary or proper for the discharge of their obligations toward such children. We do not think the fact that a son or daughter being educated is over the age of twenty-one years destroys this natural or moral obligation, provided such help is necessary to such education.

In Powers v. Sample, 72 Miss. 187, 16 So. 293, 294, the court held that, under the statute, an aged widower, who moved into the house with his married son who supported his own family, the father contributing to his own support only, was not entitled to a homestead exemption, and the court there said: ''We are not disposed to limit the purpose and scope of the statute so as to hold that no one can be held to be the head of a family unless there be those to whom he owes a legal duty to support and provide for. We are not forgetful of the number of decisions in which it has been held that the 'obligation of nature,' when recognized and followed, may constitute a family, though the relationship of those dependent upon the one who provides is not of the class which imposes a legal duty to maintain.''

It will be seen from these decisions, and many others from other states, that dependency is not the sole test of the right to exemption; and we believe that, construing the statute providing therefor liberally, as we are bound to do, the decree of the court below must be affirmed.

Affirmed.