## D. W. MOORE *v.* J. N. BRADFORD.

1. HOMESTEAD.  *Abandonment.  Intent to re-occupy.  Code 1880, § 1256.*

  Ceasing to reside on a homestead renders it liable to debts, unless the removal be temporary, by reason of casualty or necessity, and with the purpose of *speedily* re-occupying as soon as the cause is removed.  Code 1880, § 1256; Code 1892, § 1981.

2. SAME.  *Casualty or necessity.  Removal.  Intent to re-occupy.*

  The intent to re-occupy can have no influence on the question of the existence of the casualty or necessity constituting cause of removal.  Both the intent to speedily re-occupy and cause of removal must exist to protect the homestead.  If there is no sufficient cause of removal, proof of intent to re-occupy is immaterial.

3. SAME.  *What is casualty or necessity.  Abandonment.  Case.*

  Where a debtor, in order to get employment, leaves his family in charge of the homestead, going to another county, and shortly afterwards his wife visits him, intending shortly to return to the home, but is taken sick and remains with the husband, the place then being rented out and occupied by tenants for several years, the absence is not by reason of "casualty or necessity," and the property, during such absence, becomes liable to sale under execution, though the debtor did not intend to abandon his homestead, and had not changed his citizenship or place of paying poll and street taxes.  *Thompson* v. *Tillotson*, 56 Miss., 36.

FROM the circuit court of Holmes county.
HON. C. H. CAMPBELL, Judge.

Ejectment by appellant, Moore, against appellee, Bradford, for a lot of land in the town of Goodman. Bradford owned and occupied the place as his homestead. In August, 1888, he left Goodman and went to Greenville, Miss., seeking employment. He obtained a position there, being employed by a railroad company at a monthly salary. His wife was left in charge of the home. About the first of January, 1889, she went to visit him at Greenville, intending only to remain until summer, which was the sickly season at Greenville. In a few months she was taken ill, and remained there sick three or four months. When she went from Goodman the house was left in charge of an agent, who was instructed to rent it by the month, and it was rented. There was evidence tending to show that the tenant, who paid by the month, agreed to surrender the house at any time Bradford should desire to re-occupy it. Both Bradford and his wife testified that they did not intend to abandon their home, except temporarily. Bradford was not registered as a voter, except at Goodman, and continued a member of the Masonic lodge and Knights of Honor there, and paid poll and street taxes there. In October, 1889, his wife returned to Goodman and remained a short while. She then went back to Greenville, and remained with her husband until February, 1890, when she returned to Goodman, and resided with her mother on a place belonging to the latter. Meantime, October 7, 1889, the lot in controversy was sold under execution against Bradford, and was purchased by Moore. The fact of sale was not known to Bradford at the time, and he continued to reside at Greenville until the spring of 1890. He testified that he went there because he could do better, and remained as long as he had employment; that he moved on the place again in March, 1892, though he could have gotten possession at any time after January 1, 1890; that he had no other home than this. When he went to Greenville he refused an offer to purchase it. He defended upon the ground that the property was exempt as a homestead.

On the trial, the above facts, in substance, were shown.

The following instructions were given for the defendant:

1. That the temporary removal from a homestead, from casualty or necessity, with the intent to re-occupy it, does not subject such homestead property to the debts of the owner; and, if the jury believe from the evidence that J. N. Bradford had been living on said lot in controversy as his homestead, and that about the first of January, 1889, he, with his family, went to Greenville to live, but that he did not intend to abandon said lot as his homestead, they will find for the defendant, although they may further believe from the evidence that he rented out said lot for the years 1889 and 1890.

2. That the sole question presented to the jury is the question of intent with which the removal from the premises was made by the defendant; and, if the jury believe from the evidence that his said removal was regarded by him as temporary, and that he intended to return and occupy said lot in controversy as his homestead, and not acquire a homestead elsewhere, but did return and occupy said lot in controversy as his homestead, they will find for the defendant, though the jury may believe that in the meantime, between his removal and his re-occupancy, he had rented out said property.

Judgment for defendant. Plaintiff appeals.

Section 1256, code 1880 (§ 1981, code 1892), is as follows :

" Whenever the debtor, shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily re-occupying it, as soon as the cause of his absence can be removed."

*Noel & Tackett,* for appellant.

The case is controlled by the decision in *Thompson* v. *Tillotson,* 56 Miss., 36. In that case, the removal was temporary, and *animo revertandi.* Here the tenant remained in possession from the first of 1889 until March, 1891. At the

time of the sale, Bradford did not reside on the property, and he was not absent by reason of any casualty or necessity. Code 1880, § 1256.

The instructions given for defendant are erroneous. They do not express the statutory requirement that the absence must be *temporary*, by reason of casualty or necessity and with the purpose *speedily* to re-occupy.

*Hooker & Wilson,* for appellee.

1. The testimony precludes the idea that there was any abandonment of the homestead. Bradford went merely to get employment, leaving his family in possession of the homestead. Shortly afterwards his wife went to visit him, intending to return to the home, but was prevented by sickness, and the house was temporarily rented. Bradford never changed his citizenship or place of paying poll-tax, lodge dues and the like.

The homestead laws are to be construed liberally, for the protection of the families of unfortunate debtors. Here there was no such abandonment as made the property liable.

2. If mistaken in this, then we submit that the case comes within the statute which protects the homestead in cases of temporary removal by reason of casualty or necessity, with the purpose on the part of the debtor speedily to re-occupy. The defendant was poor, and sought employment elsewhere. Unfortunately, his wife was taken sick while visiting him, and was unable to return to the home. Before his return, the place was sold at a sacrifice. It is for the jury to decide whether the absence is by reason of casualty or necessity. Here the question was fairly submitted to the jury, and the court below refused to disturb the verdict. Defendant's instructions were qualified by those given for plaintiff.

Renting the property, the time of absence and the like, are only circumstances to show the intent of the debtor; they are not conclusive. Thompson on Homesteads, §§ 272–287.

Campbell, C. J., delivered the opinion of the court.

The first instruction for the defendant is not accurate, as an expression of the law on the subject, because it omits the statutory requirement of the purpose of *speedily* re-occupying the homestead, and for the further reason that it makes the intent of the party not to abandon the homestead the test of its liability to be taken for debt, without regard to the circumstance of his having ceased to reside on it.

The second instruction for the defendant is subject to the same criticism as to the intent of the person who ceases to reside on his homestead, as to removal and purpose to re-occupy the homestead.

The intent of the party *as to speedy re-occupancy* of a homestead on which he has ceased to reside because of some casualty or necessity, is an important factor in determining whether temporary removal renders the homestead liable to creditors; but the intent of the party can have no influence on the question of the existence of such casualty or necessity as justifies temporary removal without exposing the homestead to creditors. If one ceases to reside on his homestead, without some casualty or necessity to cause his removal, it becomes liable to his debts. The question in such case is; *Was the ceasing to reside on the homestead caused by some casualty or necessity such as the law contemplates?* If this question is answered in the affirmative, the next question is; *Was the removal temporary, and with the purpose of speedily re-occupying the homestead as soon as the cause of his absence can be removed?* In determining the first question, the intent of the party as to removal or re-occupying is not a matter for consideration. In the other, it is an important subject of inquiry.

Bradford ceased to reside on his homestead. The evidence does not disclose any such casualty or necessity for this as the law contemplates. *Thompson* v. *Tillotson,* 56 Miss., 36. Therefore, the intent or purpose he had, as to re-occupying, can have no influence. The non-existence of the conditions making it possible for him to cease to reside on his home-

stead, without rendering it liable for debts, made it immaterial what his purpose was.   The fact of ceasing to reside on the homestead, in the absence of casualty or necessity, precluded any further inquiry.   Ceasing to reside on a homestead is rather matter of fact than of intent.

*Reversed and remanded.*