James A. Vignaud *v.* Edward D. Dean et al.

1. Homestead. *Who entitled. Code* 1892, §§ 1970, 1971, 1986.

Only a person who is both a citizen and resident of this state, as well as a householder having a family, is entitled to a homestead exemption. Code 1892, §§ 1970, 1971, 1986.

2. Same. *Facts considered.*

Facts disclosing citizenship and residence in another state.

From the chancery court of Jackson county.

Hon. Nathan C. Hill, Chancellor.

Vignaud, the appellant, was the complainant in the court below; Dean and others, the appellees, were defendants there. From a decree of the court below in favor of defendants the complainant appealed to the supreme court. Code 1892, § 1983, provides that "a conveyance, mortgage, deed of trust or other incumbrance upon the homestead exempted from execution, shall not be valid or binding unless signed by the wife of the owner, if he be married and living with his wife." The facts are sufficiently apparent from the opinion of the court.

*Miller, Smith & Hirsh, T. M. Miller* and *H. Bloomfield,* for appellant.

The following propositions of law applicable to the facts of this case, cannot be gainsaid:

(1) The domicile and residence as well as the citizenship of the husband is that of the wife, unless they be separated.

(2) A person cannot at the same time have more than one place of residence within the legal meaning of that term. 21 Am. & Eng. Enc. L., 123; *People* v. *Shoemaker,* 63 Barb., 51; *Houghton* v. *Aula,* 16 How. (U. S.), 84.

(3) Residence usually imports the place of one's permanent domicile, rather than a temporary abode. *Reiden* v. *Holcomb,* 105 Mass., 93.

(4) The residence of a person, having been shown to be a particular place, is presumed to continue unless the contrary is proved. *Chaine* v. *Wilson,* 1 Bosw. (N. Y.), 673.

(5) One residence cannot be lost until another is gained. The residence can only be changed by the union of act and intent. *Talmadge* v. *Talmadge,* 66 Ala., 199.

(6) The constitutional and statutory provisions of the state in regard to homestead exemptions are intended for the benefit of residents and their families, and cannot be invoked by nonresidents.

The propositions are controlling in this case, and demand a reversal.

*J. I. Ford,* for appellees.

Testimony was taken by the appellant for the purpose of showing that Dean registered and voted in New Orleans for several years before 1890, the year of his removal to Pascagoula, and that he also registered and voted in New Orleans in 1892, 1893, 1894, and 1895, and that he held an office in New Orleans from 1892 to 1896, but Mrs. Dean's testimony established conclusively that the purpose of the removal to Jackson County, Mississippi, in March, 1890, was to establish

a permanent home, and, although during subsequent years Dean voted in New Orleans, the only home he had, or ever owned, was the property in controversy.

The recital in the writing upon which the suit is based, that Dean was a resident of New Orleans, in no way affects the appellees. Even if it were made for the purpose of deceiving Vignaud into letting him have money on the instrument, it would not prevent appellees from showing the true state of facts, or save the instrument from invalidity if untrue. *Hinds* v. *Morgan,* 75 Miss., 509.

The word "citizen," used in our homestead law, has no reference to any political right, and the question as to whether a man is a citizen within the meaning of the homestead law has arisen in cases where aliens, having no political rights, claimed the benefit of exemption laws, and under statutes analogous to ours it has been held that the word "citizen" in such statutes is used in its broad and popular sense, and means inhabitant, and that an unnaturalized alien is entitled to such exemption, under a statute giving the exemption to citizens. *McKenzie* v. *Murphy,* 24 Ark., 155; *Cobb* v. *Coleman,* 14 Texas, 594; Thompson on Homestead and Exemptions, sec. 90. That the word "citizen" in our code is used in the same sense is made apparent by the insertion of § 1986, code, which provides that "the exemptions of this chapter shall be allowed in favor of residents of this state only."

It has been uniformly held in this state that where the wife fails to join in an instrument that a subsequent abandonment of the property does not cure the invalidity, but that the validity of such instrument is to be determined by the conditions existing at the time of its execution. *Cummings* v. *Busby,* 62 Miss., 195; *McKenzie* v. *Shows,* 70 Miss., 388.

CALHOON, J., delivered the opinion of the court.

The only question in this case is whether an incumbrance put by Mr. Dean on a house and lot in Pascagoula, Mississippi,

was void for nonjoinder of his wife—in other words, whether the premises mortgaged was a homestead. It is a mere question of fact, and involves the necessity of determining whether or not, on June 27th, 1890, the date of the mortgage, Dean was a resident and citizen of this state. He had to be both a citizen and a resident in order to establish a homestead (code, §§ 1970, 1971, 1986), besides being a householder and having a family. Simple occupation is not enough.

The record has had our most careful examination, and we regret that we are compelled by that examination to differ from the learned chancellor who decided the case. We regard it as overwhelmingly shown by the whole history of his life from his birth to the date of his disappearance in 1898, that Dean's residence and citizenship were both always in the city of New Orleans. He never cast a vote anywhere else, he never registered as a voter anywhere else, he belonged to a military company there, he had his children schooled there, he had his business there, he served on juries there, and was there always quite active as a politician, and held office there from 1892 to 1896. The very mortgage itself signed by him, executed in the city of New Orleans, recites that he was "therein residing." Not even his wife ever heard him speak of changing his citizenship. His most intimate friends, not even his regular lawyer, not even his partner in business, ever conceived the idea that he resided or had his citizenship anywhere else than New Orleans. The first they ever heard that he was even considering a change was after his term of office expired as harbor master, in 1896, when he became impressed with the idea that he was badly treated in politics. Then he did for the first time speak of his purpose to go to Mississippi to live, putting this purpose on the ground of bad treatment in politics and the further fact of the falling off of his business, and pecuniary embarrassment.

*The decree is reversed and the cause remanded for account of the sum due and decree final, according to the prayer of complainant's bill.*