MEYER BROS. DRUG CO. *v.* ANTHONY FLY.

[63 South. 227.]

1. HOMESTEAD. *Persons entitled. Residence and citizenship. Exemption. Removal. Temporary. Casualty. Necessity. Abandonment. Return after levy. Code 1906, sections 2147, 2162 ·and 2157.*

Under Code 1906, sections 2147 and 2162, so providing, one claiming the benefit of the exemption laws of this state as to a homestead, must not only be a householder having a family, but must also be a citizen and resident of the state.

2. HOMESTEAD. *Persons entitled to. Residence and citizenship.*

Where a person left this state and went to Louisiana, organized and incorporated a business there, became a stockholder in and general manager of the business, removed his family and lived there until the failure of his business, nearly a year after·his· removal and had no intention of returning if the business was successful, under such circumstances he became not only a resident but a citizen of Louisiana and was not entitled to claim under· the homestead exemption laws of this State.

3. SAME.

Under such circumstances, one's removal is not temporary or· by reason of casualty or necessity and under Code 1906, section. 2157, so providing his former homestead is liable for his debts, and where such homestead is levied upon while he was a resi-·dent and citizen of another state under an attachment, the lien of such attachment cannot be defeated by his return and re-occupancy of the property.

APPEAL from the circuit court of Pike county.

HON. D. M. MILLER, Judge.

Suit by Meyer Bros. Drug Company against Anthony Fly. From a judgment for defendant, plaintiff appeals. The facts are fully stated in the opinion of the court.

*Thos. Mitchell, Green & Green* and *John C. Vaughan,* for appellant.

Under section 2157, Code of 1906, abandonment having. been made of the lot without casualty or necessity, the

same became liable to indebtedness.    Section 2157 of the
Code; *Bennett* v. *Dempsey*, 94 Miss. 406; *Thompson* v.
*Tillotson*, 56 Miss. 36; *Shotwell* v. *Covington*, 69 Miss
335; *Wetherbee* v. *Roots*, 72 Miss. 355; *Bank* v. *Lyon*, 52
Miss. 183; *Majors* v. *Majors*, 58 Miss. 809; *Moore* v. *Brad-
ford*, 70 Miss. 74; *Bank* v. *Lyons*, 52 Miss. 183; *Salter* v.
*Embrey*, 18 So. 373; *Bank* v. *Lyons*, 52 Miss. 183; *Whit-
worth* v. *Lyons*, 39 Miss. 467; *Trotter* v. *Dobbs*, 38 Miss.
198; *Richie* v. *Duke*, 70 Miss. 69; *Campbell* v. *Adair*, 45
Miss. 177; *Vignaud* v. *Dean*, 77 Miss. 860; *Railroad* v.
*Smith*, 70 Miss. 344; *Railroad* v. *Lyon*, 54 So. 728-784;
*Murray* v. *Charleston*, 96 U. S. 432; *Sturges* v. *Crown-
inshield*, 4 L. Ed. 550; *McMillan* v. *McNeil*, 4 L. Ed. 552;
*Fletcher* v. *Peck*, 6 Cranch, 87; *Bronson* v. *Kenzie*, 1 How-
ard, 331; *Edwards* v. *Kearsey*, 96 U. S. 595, 24 L. Ed.
793; *McCracken* v. *Hayward*, 2 Howard, 618; *Insurance
Co.* v. *Debolt*, 16 Howard, 416; *Douglas* v. *Pike County*,
101 U. S., 677; *Bank* v. *Franklin Co.*, 128 U. S. 526; *Loeb*
v. *Township*, 179 U. S. 493; *Lessley* v. *Phipps*, 49 Miss.
798; *Acker* v. *Trueland*, 56 Miss. 34; *Irwin* v. *Lewis*, 50
Miss. 363; *Latchford* v. *Carey*, 52 Miss. 593; *Jones* v.
*Hobbs*, 62 Miss. 15; *Adams* v. *Dees*, 62 Miss. 357; *Dulion*
v. *Harkness*, 80 Miss. 13; *Trotter* v. *Dobbs, supra; Brant-
ley* v. *Batson*, 36 So. 524; *Richie* v. *Duke*, 70 Miss. 69, 12
So. 208.

Appellee, being a resident of the state of Louisiana at
the time of the levy of the attachment, is not entitled to
have a homestead exemption in Mississippi, so as to de-
feat a lien upon the property which at the date of the
contracting of the debt was liable for its payment, and
attached therefor.    *Vignaud* v. *Dean*, 77 Miss. 860; *Ben-
nett* v. *Dempsey*, 94 Miss. 408; *Moore* v. *Bradford*, 70
Miss. 70; *Thompson* v. *Tillotson*, 56 Miss. 36; *Salter* v.
*Embrey*, 18 So. 373; *Watson* v. *Bank*, 119 S. W. (Texas)
915; Homestead Cent. Dig., Secs. 141-146; Dec. Dig. Sec.
95; *Leonard* v. *Ingram*, 10 N. W. (Ia.) 805; *Kehnert* v.
*Conrad*, 69 N. W. (N. D. 1896), 185; *McClellan* v. *Carroll*,

105 Miss. 48

42 S. W. (Tenn. 1897), 185; *Baker* v. *Leggett,* 98 N. C.
305; *Stinde* v. *Brehrens,* 6 Mo. App. 309; *Knox* v. *Yow,*
91 Ga. 375; *The City Bank of Macon* v. *Smisson,* 73 Ga.
422; *Jackson* v. *Du Bose,* 87 Ga. 76; *Cabeen* v. *Mulligan,*
87 Amer. Dec. (Ill. 1865), 247; *Northwest Thresher Co.*
v. *McCarroll,* 118 Pac. 353; *Lyon* v. *Adams,* 99 S. W.
(Ky. 1907), 900; *Smith* v. *Stafford,* 112 N. W. (N. D.)
967; *Jarvais* v. *Moe,* 38 Wis. 440; Thompson on Home-
steads and Exemptions, section 270, and *Ungers* v. *Chap-
man* (Michigan) 109, N. W. 1124; *Tracy* v. *Harbon,* 89
S. W. (Texas) 999.

Judge THOMPKINS, in Thompson on Homesteads and
Exemptions, supports this doctrine fully throughout his
work. See, also, *Watkins* v. *Overby,* 83 N. C., 165; *Em-
bry* v. *Jackson Parish Bank,* 51 So. (La. 1910), 87.

There is not, we respectfully submit, a case in the
books where it has been held that when a party is at-
tached on the ground of being a nonresident, and a lien
is obtained upon property liable to the debt by reason
of such nonresidence, that the debtor can defeat the lien
by becoming at once a resident. Such decision would be
monstrous because it would enable one to defeat the debts
which he owed by establishing and declaring an exemp-
tion under a statute which could not at the date of the
making of the contract have had any possible reference
to its obligations.

The doctrine of *Trotter* v. *Dobbs* has never been ex-
tended to this point, and being erroneous and mischiev-
ous, it ought not to be extended further than has been
done, and we respectfully submit that the unanimous au-
thority should be followed upon the point here involved.

*Mixon & Cassidy,* for appellee.

The learned circuit judge in the court below was evi-
dently controlled in the giving of a peremptory instruc-
tions by the following propositions: First, that the de-
fendant in attachment was at the time of the trial in the

circuit court, actually occupying and residing upon the premises in controversy, he, being a householder, resident of the state of Mississippi, and the head of the family.

The question of abandonment did not seem to occupy the mind of the court for the reason that, at the time of the trial even after levy, the defendant and his family were actually occupying and residing upon the property and claimed the same at that time as a homestead. His right to do this is sustained by an unbroken line of decisions handed down by the supreme court of the state of Mississippi during the past fifty years or more, beginning with the case of *Trotter* v. *Dobbs,* 38 Miss. 198, in which case the court said:

"The policy of the statute plainly is, to give to the defendant the use of the property exempted from execution, for the benefit of himself, and as a means of support of his family. The provision is, that the property shall be 'exempt from seizure or sale under any execution,' etc. No time is limited for the operation of the act, nor restriction put upon the enjoyment of the privilege contemplated by it; but it is extended to 'every free white citizen of this state, being a householder and having a family.' It appears, therefore, that whenever a party fills this description or character, he is entitled to the benefit of the privilege conferred, provided he occupies the position before the land has been sold under execution. For it is as necessary that he should hold the property for the support of himself and his family, where he becomes a householder and head of a family after judgment rendered against him, as when he occupied that relation before the judgment; and the reason of the exemption applies as well in the one case as in the other."

We find this case especially approved in *Lesley* v. *Phipps,* 49 Miss. 790, adhered to in *Irwin* v. *Lewis,* 50 Miss. 363; *Letchford* v. *Cary,* 52 Miss. 791; *Jones* v. *Hart,*

62 Miss. 13; criticised but not overruled by Judge CAMP-BELL in *Richie* v. *Dukes,* 70 Miss. 69 and followed in *Dulion* v. *Harkness,* 80 Miss. 8, and *Wood* v. *Bowles,* 92 Miss. 843.

Counsel for appellants strenuously insists that the policy of our homestead laws should in effect, be abrogated by overruling the decisions in *Trotter* v. *Dobbs,* and those following and approving it, above cited.

The same contention was raised in *Lessley* v. *Phipps,* 49 Miss. and completely answered by the court on pages 85 and 86 of the opinion. Moreover, since the decision in the Dobbs case, and also since the criticisms thereof, in *Richie* v. *Dukes,* 70 Miss. 869, substantially the same statutes which it is unnecessary to quote, having been re-enacted by our legislature and since the criticisms made by Judge CAMPBELL in *Lesley* v. *Phipps.*

Several decisions have been rendered by this court approving the doctrine laid down in *Trotter* v. *Dobbs* without so much as referring to the criticisms referred to and in the last expression of this court on the subject *Woods* v. *Bowles,* 92 Miss. 843, it is said: "It has been the unbroken authority in this state since the decision of the case of *Trotter* v. *Dobbs,* 38 Miss. 198, that a judgment debtor may successfully interpose his claim of exemption as against the execution creditors at any time before actual sale, if the right to claim exemption existed at that time."

And surely it is a vain hope for the appellants to presume that this court will now repudiate a policy so long established, supported by such sound reasoning, and intended for such beneficent purposes by overruling the decisions quoted.

All of these cases take the position that the debtor may defeat the levy by establishing upon the land prior to the sale thereunder, a homestead, and though the distinguished counsel for appellants attempt to draw the distinction as between one, who, having acquired a home-

stead in Mississippi, and then moves therefrom, and before judgment and sale returns and occupies the same as a homestead, and one, who, being a resident of Mississippi by some act of his, acquires a homestead, we respectfully submit to the court that, in our opinion, we cannot see the difference. In other words, we take the broad position that the man who never lived in Mississippi, who contracts debts in either of these states, has large property interest here, but has only a ten-acre tract in Mississippi, but perhaps in bankruptcy when the "crash" comes, moves upon this small tract of land even though the same has been attached, that, under the policy of our laws, he can claim that tract as a homestead for the protection of his wife and children.

As we understand the law as it now stands, any person otherwise entitled to exemptions has the right to move upon premises at any time before sale under execution or attachment, and hold same as a homestead, and thereby defeat the sale. Certainly no superior right can be acquired by writ of attachment levied than can be acquired by judgment or decree rendered, where both became a lien from the date of rendition. Of course we contend that the right of the appellee to claim exemption existed, notwithstanding any question of abandonment from the date he moved upon the premises, claiming the same as his homestead subsequent to the levy of the attachment writ. We cannot see why there should be any difference between the lien created by a judgment or decree, from that of a lien created by the levy of an attachment writ. If the first two can be defeated by the debtor moving on the premises before the sale, then why should not the lien created by the attachment writ be defeated by moving thereon before the trial of the case, and at the trial of the case interposing his claim of exemption.

The court evidently took the view that, by reason of the writ being levied upon the property not subject to levy and sale under the laws of the state of Mississippi,

that no jurisdiction had been acquired, and that the writ had been improperly sued out; therefore it gave a peremptory instruction. What other course could the court have pursued? Suppose the court had allowed the case to go to the jury on the question of residence or nonresidence of the appellee, and the jury should have found that the attachment was rightfully sued out when the court was of the opinion that the property levied upon could not be sold under the attachment. The whole proceeding would have been little more than a farce and we submit the court was right when the facts demonstrated that this property levied on was not subject to levy or could not be subjected to a sale under the levy and was justified in giving a peremptory instruction.

Argued orally by *Garner W. Green* for appellant and and *W. B. Mixon*, for appellee.

REED, J., delivered the opinion of the court.

Anthony Fly was a resident for some years of McComb City, and was engaged in the drug business there. He purchased a house and lot in that city, which he, with his family, consisting of his wife and several children, occupied as a home. During the latter part of 1909 and the first of 1910 he assisted in organizing a drug business in the city of New Orleans, which was located on Canal street and known as "A. Fly, The Druggist." The business was incorporated. He was one of the incorporators and stockholders. He was also the general manager. The business continued during the year of 1910, and failed. The doors of the store were closed on Christmas Eve, 1910. Mr. Fly's family moved to New Orleans about March 15, 1910. For several months after the removal of the family to New Orleans, his residence was in charge of Mr. Noland, a friend. Then he rented it to Mrs. Lea, who conducted a boarding house. She continued to rent and occupy it by the month until after the

property was levied on by attachment in this case, and until Mr. Fly and his family returned to McComb City. Mrs. Lea rented the house partly furnished; and it appears that only a part of his furniture was taken by Mr. Fly to New Orleans upon the removal of his family to that city, for the reason that they only did light housekeeping there. Mrs. Fly, in her testimony, states that she retained a room in the residence at McComb City during the time it was occupied by Mrs. Lea.

Mr. Fly, when examined at the trial regarding his residence in New Orleans, testified as follows: "Q. Mr. Fly, did I understand you to state that, being an original incorporator of that concern and in active management, you only went there to stay a short time? A. If you will allow me to explain the preliminaries in conjunction with the case, I could cover it more clearly. I couldn't make any positive statement as to that. Of course, I was bound to have been looking to the future and anticipating this business; but in making an effort to establish this business, it gave me no assurance as to the future. Hence— Q. In other words, if the business had been a great success, you would have remained there? A. Possibly would; in fact, I know I would. Q. That was your intention at that time? A. Yes; it was a venture, though. Q. If the venture happened to be successful, you intended to stay there? A. Yes; but, as it didn't pan out, I took my family back home."

It was shown by the evidence that Mr. Fly was not engaged in any business in McComb City in 1910. His business was then in the city of New Orelans. During that year, he did not reside in McComb City, but resided in New Orleans. He continued in the employ of the company of "A. Fly, The Druggist," until its failure. He contracted the indebtedness sued on in this case, which was evidenced by his several promissory notes, while he was in New Orleans. Some of the notes are dated February 14, 1910, and others June 9, 1910; and on all his

address is given, "New Orleans, La." We notice that it is shown upon the face of the notes that he deposited or pledged with Meyer Bros. Drug Company, as collateral security for the payment of the notes, fifty shares of the capital stock of "A Fly, The Druggist." It appears from this, therefore, that he was a large stockholder in the incorporated business. He states that he did not vote in McComb City in 1910, and he could not say definitely whether he had paid his poll tax there for that year.

Having failed to pay his promissory notes, Meyer Bros. Drug Company sued out attachment upon the ground that Mr. Fly was a nonresident, and a levy was made, under the writ, upon the residence property owned by him in McComb City. It appears that there were two attachment suits both alike, and, upon agreement, they were tried together as one. After the levy of the attachment writ, and before the trial of the case, Mr. Fly moved to McComb City and occupied the residence. The court granted a peremptory instruction in his favor, and by the judgment the levy of the writ of attachment on the property was discharged and the lien thereon released.

Appellant's counsel, in their brief, among other points, present the following: "No citizen and resident of Louisiana, having contracted a debt in Louisiana, payable in Missouri, can, when an attachment is levied in Mississippi on his estate, move from Louisiana to Mississippi, and reoccupy an abandoned homestead, in order to defeat liability of the same to be appropriated to said indebtedness." Section 2147 of the Code of 1906 provides that "every citizen of this state, male or female, being a householder, and having a family residing in any city, town, or village, shall be entitled to hold, exempt from seizure or sale under execution or attachment, the land and buildings owned and occupied as a residence by such person, not to exceed in value, save as hereinafter provided, three thousand dollars." By section 2162 of the Code of 1906 exemptions are only allowed in favor of

residents of this state. It will therefore be seen that one claiming the benefit of the exemption laws of this state must not only be a householder having a family, but as well both a citizen and a resident. *Vignaud* v. *Dean,,* 77 Miss. 860, 27 South. 881.

Appellant contends that Mr. Fly had ceased to reside upon his homestead, and that it was therefore liable under the provisions of section 2157 of the Code of 1906, which reads: "Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed." Where was Mr. Fly's residence during 1910, while engaged in business in New Orleans? In Black's Law Dictionary (2 Ed.), it is stated that a residence is: "Living or dwelling in a certain place permanently or for a considerable length of time. The place where a man makes his home or where he dwells permanently or for an extended period of time." In Anderson's Law Dictionary it is stated that: "Residence means a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a mere temporary locality of existence"—citing *In re Wrigley,* 8 Wend. (N. Y.) 140. Mr. Anderson also defines nonresidence as: "Actual cessation to dwell within a state for an uncertain period without definite intention as to a time for returning, although a general intention to return may exist."

It cannot be said that it is necessary for a person to remain in a place any length of time in order to acquire a residence there. Whether or not a man is a resident of a place may be determined by all of the circumstances surrounding his living there, such as carrying on business, engaging in a profession, etc. In the case of *Hairston* v. *Hairston,* 27 Miss. 704, 61 Am. Dec. 530, SMITH, J., delivering the opinion of the court and discussing the question of place of domicile of a man, after stating that

the domicile constituted, "first, a residence; and, secondly, the intention of making it the home of the party. There must be the fact and the intent"—continued: "From the nature of the subject, it is impracticable to lay down any very definite rule by which either the fact of a permanent residence, or the intention of permanent residence, is to be ascertained. In none of the decided cases on this subject is there a definite period of time recognized, as being necessary to create a domicile. The time may be shorter or longer, according to the circumstances; and in all cases the question whether a person has or has not acquired a domicile must depend mainly upon his actual or presumed intention. . . . The place where a man carries on his business or professional occupation, and has a home or permanent residence, is his domicile; and he has all the privileges, and is bound by all the duties, flowing therefrom."

We understand that domicile is more than a residence; but the statement of the principle of the law made by Judge SMITH will be applicable in our present consideration. Was Mr. Fly a citizen of Louisiana during 1910? From 2 Words and Phrases, p. 1166, we obtain the following: "Citizens are members of the political community to which they belong. They are the people who compose the community, and who in their associated capacity have established or submitted themselves to the dominion of a government for the promotion of their welfare and protection of their individual, as well as their collective, rights"—citing *United States* v. *Cruikshank,* 92 U. S. 542, 549, 23 L. Ed. 588.

Citizenship is a status. It follows residence. It results from residence and intent. If Mr. Fly had in mind, when he moved to New Orleans, a determination to change his residence and permanently reside in New Orleans, then he changed his citizenship from Mississippi to Louisiana. The very facts that he was residing in New Orleans, and was engaged in business there, and had

moved from McComb City, and was not in business there, will raise a presumption that he was a citizen of Louisiana. "A citizen of one state, who in good faith gives up his residence there, and takes up a permanent residence in another state, acquires citizenship in the new place of domicile." Anderson's Law Dictionary, citing *Chicago, etc., R. Co.* v. *Ohle* (1886) 117 U. S. 127, 6 Sup. Ct. 632, 29 L. Ed. 837. From Mr. Fly's very statement of his purpose in removing to New Orleans, to engage in business there, from his residence in that city of about one year, from his business operations, including the organization and continuation until its failure of the drugstore, and from all surrounding circumstances, we are led to conclude that he changed his residence from Mississippi to Louisiana; and, in fact, we believe that his removal, and life in New Orleans, was such that he became a citizen also of Louisiana.

The evidence shows that Mr. Fly had ceased to reside in his homestead in McComb City. We do not believe he has shown his removal to New Orleans was only temporary, and by reason of some casualty or necessity, and that at the time he purposed speedily reoccupying the homestead, and that there was a cause of absence to be removed. It appears that he went to New Orleans to engage in business which he himself was aiding to organize. He certainly expected the enterprise to be a success; surely he would not have entered into it, had he thought otherwise. According to his own testimony, if the business had been successful, he intended to remain in New Orleans. We conclude that his former homestead in McComb City was, under the provisions of section 2157 of the Code of 1906, liable to his debts after his removal to New Orleans. *Bennett* v. *Dempsey,* 94 Miss. 408, 48 South. 901, 136 Am. St. Rep. 584; *Moore* v. *Bradford,* 70 Miss. 70, 11 South. 630; *Thompson* v. *Tillotson,* 56 Miss. 36. In *Thompson* v. *Tillotson, supra,* Judge CHALMERS, delivering the opinion of the court, de-

fining "casualty" and "necessity," said: "The word 'casualty' evidently refers to some sad accident—as fire or flood, or some social or family disaster or misfortune —which causes a temporary absence. 'Necessity' may embrace considerations of health, or travel, or public official engagements, or even a private business emergency of an exceptional and temporary character. The two words may fairly imply various other events, impossible to enumerate; but no proper construction can make them cover an indefinite abandonment for years, induced by the fact that the owner has found elsewhere a location deemed more advantageous. Actual residence is the requirement of the statute, and the only exception tolerated in an absence temporary in its nature, produced by necessity or casualty, and with a purpose of speedy return as soon as the cause of absence has ceased."

There had been no reoccupancy by Mr. Fly of the property when the writ of attachment was levied. It was not then his homestead. He remained a resident and citizen of Louisiana until after the writ was levied and the lien therefrom was fixed on the house and lot formerly his homestead in McComb City. Therefore, at the time the lien attached to the property, he had no right to claim his homestead exemption in Mississippi. He lost the right when he removed from and ceased to be a resident and citizen of this state. His very status as a nonresident precludes him. The right is only bestowed by the statute upon residents and citizens. The testimony shows that Mr. Fly after the lien was fixed, returned to the state with his family, and before the trial of the case, reoccupied his former home. By so doing, has he defeated the lien?

Mr. Fly contends that this question is resolved in his favor by the decision in the case of *Trotter* v. *Dobbs*, 38 Miss. 198. Therein it was decided that the marriage of a man, who owned and occupied as a home property

about to be sold under an execution levy, on the very day of the sale, would entitle him to claim it as exempt and defeat the sale. The rule in this case has been followed by the court in several other cases. *Lessley* v. *Phipps,* 49 Miss. 790; *Irwin* v. *Lewis,* 50 Miss. 363; *Letchford* v. *Cary,* 52 Miss. 791; *Wood* v. *Bowles,* 92 Miss. 843, 46 South. 414, 131 Am. St. Rep. 559; *Jones* v. *Hart,* 62 Miss. 13; *Dulion* v. *Harkness,* 80 Miss. 8, 31 South. 416, 92 Am. St. Rep. 563. The case was severely criticised by Judge CAMPBELL in the case of *Richie* v. *Duke,* 70 Miss. 66, 12 South. 208. He referred to the decision as "erroneous" and "mischievous," and as being unsound. In *Richie* v. *Duke* it was decided that where land is levied on under execution, and a homestead therein has been set off to the judgment debtor, and the remainder is subject to sale, such debtor cannot, before sale, dispose of the homestead allotted to him, and move on the other land, and claim it as a homestead.

Will the decision of *Dobbs* v. *Trotter* control the present case? Should the very liberal holding therein in favor of the debtor claiming exemption be extended to include the case now before us? There is a difference in the facts of the cases. Dobbs was a householder; he had occupied the land for about twelve months before time of the sale; he had hired servants, kept house, and had boarders. In delivering the opinion, Judge HANDY decided that these facts constituted him a citizen of the state. By reason of his residence and citizenship, he was qualified to receive the benefits of the privilege of homestead exemption conferred by the statute to heads of families. He was a resident, a citizen, a householder, and the head of a family. We do not find that Mr. Fly had all of these qualifications when the lien attached. The homestead exemption laws are meant for the benefit of the families of those who are residents and citizens of Mississippi. In *Hill* v. *Franklin,* 54 Miss. 632, it is decided that exemption is not an estate, but a privilege,

depending on contingencies. In *Roberts* v. *Thomas,* 94 Miss. 219, 48 South. 408, 136 Am. ·St. Rep. 573, Judge FLETCHER, delivering the opinion, said: "Mere occupancy certainly is not sufficient; but, when that occupancy is coupled with residence, citizenship, and the status of being head of a family, the right is perfect."

The question here presented is: Can a nonresident of this state remove to this state and occupy premises upon which a lien has been fixed by levy of attachment, claim it as his homestead, and thereby defeat the lien? We do not believe that it has been settled by any former decision of this court. The facts in the cases cited by counsel for appellee are not like those in this case. None of the cases present the claim of a resident of another state moving into this state, occupying property upon which a lien has been fixed, and asserting the privilege of the homestead exemption. In all of the cases the citizenship and residence of those claiming the exemption was in Mississippi. When Mr. Fry removed from the state, he relinquished his privilege of homestead. He was no longer within the purpose or spirit of the provision of the statute providing exemption. The property, formerly the homestead, but no longer so, was subject to the satisfaction of his debts. We do not believe that the doctrine announced in *Trotter* v. *Dobbs* should be extended to include the case presented by this record. At the time of the attachment, Mr. Fly's property was liable for his debts under the statute, and was subject to attachment, and to the enforcement of the lien therefrom. We conclude that the liability and the lien so fixed should not be defeated by his return to McComb City and the reoccupancy of the property. The trial court erred in giving the peremptory instruction for appellee.

*Reversed, and judgment here for appellant.*