BANK OF HATTIESBURG *v.* MOLLERE ET UX.

[79 South. 87, Division B.]

HOMESTEAD. *Abandonment. Reside.*

> The head of a family ceases to "reside" on his homestead within
> the meaning of Code 1906, section 2157, when he leases his home-
> stead and goes to another state and obtains work, sells a part
> of his household furniture and takes the balance with him, and
> his return is contingent upon his securing a position more
> favorable near his homestead.

APPEAL from the chancery court of Forrest county.
HON. W. M. DENNY, Chancellor.

Bill by the Bank of Hattiesburg against H. P. Mollire
and wife. From a decree giving only partial relief
prayed for, complainants appeal.

The facts are fully stated in the opinion of the court.

*Currie & Smith* for appellant.

Under the facts as reflected by this record, we
respectfully submit that the chancellor erred in hold-
ing that these people were still citizens and residents
of this state and therefore entitled to the benefit of
the homestead exemption laws thereof.

Section 2147 of the Code reads: "Exemptions in
cities, towns, and villages. Every citizen of this state,
male or female, being a householder and having a
family residing in any city, etc., shall be entitled to
hold, exempt from seizure, etc., the land and buildings
owned and occupied as a residence by such person,
etc."

Section 2162 says: "Residents only to have exemp-
tions. The exemptions in this chapter shall be
allowed in favor of residents of this state only."

Section 2157 reads: "Ceasing to reside on home-
stead renders it liable.   Whenever the debtor ceases
to reside on homestead, renders it liable.—Whenever
the debtor ceases to reside on his homestead, it shall
be liable to his debts, unless his removal be temporary,
by reason of some casualty or necessity, and with the
purpose of speedily re-occupying it as soon as the
cause of his absence can be removed."

These sections contain all the statutory law of this
state touching the point at issue in this case, and upon
their interpretation in connection with the facts of
the case at bar hangs the decision of this court.

For the defendants to be entitled to the exemption
claimed here they must be citizens and residents of
this state, also householders having families.   See
above sections of the Code and cases there annotated,
especially *Meyer Bros. Drug Co.* v. *Fly,* 63 So. 227.

We think this question can be greatly narrowed.   The
defendants had ceased to reside on this property in
July, 1914, and the attachment was served in February,
1915.   The case was tried in March 1916 and they
were still living in New Orleans at that time, still
having no definite idea as to when they would be able
to return.   Now section 2157 applies here.   This
provides that ceasing to reside on the homestead ren-
ders it liable to debts, unless the removel "be temporary,
by reason of some casualty or necessity, and with the
purpose of spedily re-occupying it as soon as the
cause of his absence can be removed."  Now there is
something besides intention to be considered here.
As was said by Chief Justice Campbell in *Moore* v.
*Bradford,* 11 So. 630:

"The first inquiry, then, in this case is, was there
any casualty or necessity, in contemplation of the
law, authorizing these defendants to cease to reside
on their homestead?  We deny that the facts alleged
by them as their excuse for their act are sufficient to

constitute casualty or necessity. *Thomas* v. *Tillotson,* 56 Miss. 36. In this connection we beg again to call the court's attention to the case of the *Drug Co.* v. *Fly,* 63 So. 227, which is very similiar to this case on its facts.

The intention here is too general; it should be specific, and definite; as was said in the *Fly case, supra,* quoting with approval Anderson's Law Dictionary in defining nonresidence: Actual cessation to dwell within a state for an uncertain period without definite intention as to time for returning although a general intention to return may exist.''

We respectfully request that the court bear in mind that the exemption claimed here runs only to citizens and residents of this state; that the statute permits such persons to cease to reside on their homstead only because of the existence of casualty or necessity or some extraordinary misfortune, accident, or superimposed occurrence that will in its very nature go by and cease to be sooner or later, and then they must have a purpose, a definite intention of speedily returning to and reoccupying the temporarily abandoned homestead. Then bear in mind that these claimants here had absolutely cut loose from their homestead in this state and had moved everything (except what they sold to their tenants) they had in the way of household goods, and effects into Louisiana and there set up housekeeping with their own things in a leased house, their people all there in their native city, where Mr. Mollere has a job in his own profession of electrician, which business he had quit several years before to go into the picture house business in Hattiesburg—he had failed in this new venture and now he is back where he came from at his old business. The only thing that connects him in any way with his Hattiesburg homestead is a vague, shadowy indefinite idea or hope that sometime, somewhere,

somehow, he will be able by reason of increasing fortune or good luck, to go back to Hattiesburg to live. We respectfully submit that to bring this situation under the statute in question would be to absolutely nullify its force and effect and to forget the construction which this court has placed upon its carefully used words and phrases.

We therefore submit that the learned chancellor should be reversed and the attachment against this property should be re-instated to be dealt with according to law.

*Currie & Currie,* for appellee.

Under the facts of this record it would have been a travesty upon justice, a sacrilegious breaking up of the aspirations of a family, a shattering of the fond hopes for domestic felicity and prosperity between man and wife, a breaking up of a home, for the lower court to have held that this man's home was subject to seizure and sale under attachment. It would be a reversal of justice for this court to disturb the decree of the lower court.

The case of *Meyer Brothers Drug Company* v. *Fly,* 63, So. 227, the main case relied upon by counsel in the argument of this case before the lower court and also in the brief on file, in this court, is not an authority in support of their contention. The facts in the case at bar and on trial are that the return of the appellee to his homestead is dependent upon his success at New Orleans so as to enable him to return, or getting employment in the city of Hattiesburg whereby to enable himself to return. In the case of *Meyer Bros.* v. *Fly,* the facts were exactly the reverse. In that case it was the intention of the homesteader not to return provided he succeeded in business.

Counsel in their brief quote certain language employed by the court in ruling upon a question of the admissibility of testimony and complain at the views of the court therein expressed, and say that it is 'a total misconception of 'the law on the subject. We say that the learned Chancellor in the utterance quoted laid his judicial finger right on the very heart of the homestead exemption laws of this state.

In the quotation in counsel's brief from *Moore* v. *Bradley,* 11 So. 630, we find this expression: "And with the purpose of speedily reoccupying the homestead as soon as the cause of his absence can be removed."

In the case of *Thompson* v. *Tillotson,* 56 Miss. 36, quoted from by counsel in his brief, and in the quoted part thereof we find the following expression: "The two words may fairly imply other events impossible to enumerate."

If misfortune, poverty, lack of employment and starvation do not constitute necessity, one of the various other events" which justify temporary absence from the homestead under this Code section, then we confess our utmost inability to comprehend at all the object and purpose of this beneficent provision of the homestead laws in this state.

If the court will for a moment turn its attention to the homestead entry laws of the United States and consider them it will find that the United States government has provided for temporary absence in the course of the perfection of the homestead claim, and one of the justifying causes for temporary absence from the homestead is the failure or inability of the homesteador to make a living upon the homestead, while undertaking to prove it out, so we have in this very case one of the causes that would justify temporary abandonment under the statutes of the United States providing for the entry of homesteads. Surely our state statute

undertaking to shield and protect a man's home and family from the voracious ravages of a creditor when the debtor, as in this case, has been overtaken by adversity, hardships, poverty and bankruptcy, would not be less beneficent in its provisions.

The homestead laws are liberally construed and applied in favor of the preservation of the homestead.

We submit this the decree is closed and ought to be affirmed.

STEVENS, J., delivered the opinion of the court.

Apellant was complainant in a bill filed by it under section 536, Code of 1906, authorizing attachments in chancery against nonresidents. Appelleees H. P. Mollere and wife, were the defendants and alleged nonresidents of the state of Mississippi. It is charged in the bill that the defendants are indebted to the complainants, in the sum of two hundred and fifty-six dollars and eighty-three cents evidenced by promissory note; that the defendants are nonresidents of New Orleans, La.; that they were the owners of certain real estate particularly described in the bill; and that the complainant was entitled to an attachment and to have the said real estate subject to the payment of the said note, interest, and attorney fees. The writ of attachment issued and was duly levied on said real estate. The defendants answered, and their sole defense is that the house and lot upon which the attachment was levied is the homestead of the defendants. Upon hearing the chancellor awarded the complainants a personal decree for the debt sued for, but declined to subject the property levied upon. From that portion of the decree discharging the levy of attachment and releasing the property as exempt, the complainant appeals.

The testimony shows that Mr. Mollere and his wife some four years before the institution of this suit

moved to Hattiesburg where Mollere operated a moving picture show. After conducting this business in Hattiesburg for a year or two, the defendant became financially embarrassed and went into bankruptcy. At that time Mollere had acquired and owned the house and lot involved in this suit, a portion of the money used in making the cash payment being advanced by appellant bank. The defendants used the premises as their homestead for a year or two and until after their bankruptcy, when they moved to New Orleans, in July, 1914. When leaving Hattiesburg they leased their home, and in delivering possession to the tenant they sold him a portion of the furniture and garden tools. The balance of the furniture the defendants had stored several months and afterwards shipped to New Orleans.

Mellere is an electrician by profession, and after leaving Hattiesburg went to Texas in search of a position, and, failing to find one, returned to New Orleans, where he and his wife lived for a time with his father, and Mollere operated a jitney bus with his father's car. The defendant then secured a position with an electric company in New Orleans, with whom he was employed at the time of this trial, doing at odd times some contract work on his own account. After moving from his father's home, they lived at No. 5230 Kamp street for a while, renting the place there, and using therein their furniture and effects, which they had moved from Hattiesburg. They then moved to No. 921 Leontine street, occupying a place they leased for a term of one year and where they were living at the time of the trial of this case, in March, 1916. They returned to Hattiesburg for the express purpose of trying this lawsuit, and then testified that the premises in question constitute their homestead, that in going to Louisiana they did so for the purpose of securing employment, and that they had a general

intention of returning to Hattiesburg whenever they could find in Hattiesburg a satisfactory job or employment.

Mr. Mollere, among other things, testified to the following effect:

"Q. You have no definite idea now about when you will be able to come back here? A. No, sir. Q. You have no idea whether it will be two or three years, or when it will be? A. No, sir; but as soon as I can I am coming back though. Q. You stayed there on Kamp street for quite a number of months, and then you moved to Leontine street, where you are now living? A. Yes, sir. Q. And that is where you have your home now? A. I am living there now; yes, sir. Q. Then all of your family and your fixed place of abode is in New Orleans, is it not? A. Yes, sir; my address is New Orleans, La., No. 921 Leontine street."

Mrs. Mollere to the same effect testified as follows:

"Q. You say that you hope that some time in the future you will be able to move back here to Hattiesburg? A. I do; yes, sir. Q. You have no idea though as to when that will be? A. Why, whenever Mr. Mollere gets employment here, or we are lucky enough to save up enough money to be able to come back here and Mr. Mollere can get back into business here; but if he gets employment here we will move back right away. Q. And if he cannot? A. Then we will have to wait until we can."

The testimony leads us to the conclusion that the defendants at the time this lawsuit was tried were citizens and residents of New Orleans, La., and that they had ceased to reside on their homestead within the meaning of section 2157, Code of 1906. The only casualty or necessity here shown is financial embarrassment. The defendants were not reared at Hattiesburg or in Mississippi, but originally came from Louisiana. When Mr. Mollere failed in business

118 Miss.—11

at Hattiesburg, he left there in search of greener
fields. His testimony, as also the testimony of his
wife, shows that their return to Hattiesburg is con-
tingent altogether upon their securing in Hattiesburg a
position more favorable than the one they now have
in New Orleans. They had no definite idea whether
they would ever get another position in Hattiesburg
or engage in business there again, and no idea as to the
length of time. The obstacle in the way of a speedy
return may never be removed, and their intention or
purpose to return is general. Indeed, it cannot be said
that they have in the words of the statute "a purpose
of speedily reoccupying" the homestead. This being
so, the case is ruled by general principles announced
in *Meyer Bros. Drug Co.* v. *Fly,* 105 Miss. 752, 63 So.
227. In the case mentioned our court, in quoting from
Anderson's Law Dictionary, among other things said:

"Mr. Anderson also defines nonresidence as: 'Actual
cessation to dwell within a state for an uncertain
period without definite intention as to a time for re-
turning, although a general intention to return may
exist.' "

The cases of *Moore* v. *Bradford,* 70 Miss. 70, 11 So.
630, and *Thompson* v. *Tillotson,* 56 Miss. 36, are in
point.

We do not intend to say that a householder may not
leave his home in search of employment, with an
intention to return. Each case is necessarily governed
by its own facts. The test laid down by our court in
*Meyer Bros. Drug Co.* v. *Fly* rules the present case
against the claim of the defendants. The decree of
the learned chancery court, in so far as it discharged
the attachment, will be reversed, attachment reinstated,
and the cause remanded for further proceedings in
accordance with this opinion.

*Reversed and remanded.*