# Bank of Cruger *v.* Hodge.

(In Banc.   October 14, 1940.)

[198 So. 26.   No. 34164.]

G. H. McMorrough, of Lexington, and Gardner, Denman & Everett, of Greenwood, for appellant.

**Alfred Stoner**, of Greenwood, for appellee.

Argued orally by **Richard Denman,** for appellant, and by **Alfred Stoner,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee is the owner of the land in question and she occupied it with her husband and two daughters as the family homestead during the years, 1931 and 1932. During the latter year, however, owing to the financial depression then extremely prevalent throughout the country, and because they were unable to secure the advances necessary to make a crop, they were obliged to remove to a town in a neighboring county where the husband had obtained employment. He continued in various employments in different towns until on or about June 1, 1939, at which time the family was residing at Greenwood and the husband was employed as collector by a furniture company there.

On October 19, 1937 a judgment was rendered in favor of appellant and against appellee and her husband, which judgment was duly enrolled in the office of the circuit clerk of the county in which the land is situated, and an execution having been issued under the judgment, the land was advertised by the sheriff to be sold on the 1st day of June, 1939. A day or two before the day of sale, appellee moved some of the furniture from the residence in Greenwood to the house on the land in question, and thereafter appellee and one of her daughters, the other

daughter being then married, spent one or two nights during every week end on the land, but the week days were usually spent at the residence in Greenwood, where the daughter was in school and where the husband continued in his employment as aforesaid.

The contention of appellee is that she had never abandoned her homestead, but that her removal in 1932 was temporary, by reason of the necessity aforesaid, and that throughout the intervening seven years next preceding the advertised date of sale under the execution, she and her husband had maintained the intention and purpose of reoccupying the homestead as soon as the cause of their absence could be removed. See Sec. 1776, Code of 1930. Their testimony is to the effect, however, that their intention to return was when they had been able to make enough money, in employment away from the homestead, to buy the necessary farming equipment and to maintain themselves on the farm homestead; that during the seven years absence they had not been able to do this, and throughout the testimony there is no indication when, or whether ever, they will be so able. The statute allows only a removal which may be justly adjudged as temporary and requires a speedy return as soon as the cause of the absence can be removed; but according to the testimony, the obstacle in the way of a speedy return may never be removed. The case is controlled, therefore, by the rule as reviewed in Bank of Hattiesburg v. Mollere, 118 Miss. 154, 79 So. 87, with the result that it must be held that there is an abandonment of the homestead.

Appellee relies as her second contention on the long line of cases in this state beginning with Trotter v. Dobbs, 38 Miss. 198, to the effect that a judgment debtor may successfully interpose his claim of exemption as against the execution creditor at any time before sale under the execution if the debtor has actually gone into the occupancy or reöccupancy of the land as a homestead at the time of the sale. In order to avail of that

rule, the premises being already habitable, the occupancy must be such as will stamp the place claimed as a homestead with the character then and there of an actual and permanent residence of the debtor and his family, and it is not sufficient that it has been made a mere part-time lodging place, while the real residence of the family remains elsewhere, as the testimony shows was the case here.

Reversed and remanded.

### DISSENTING OPINION.

**Ethridge, J.,** delivered a dissenting opinion.

I think the judgment in this case should be affirmed. The owner does not lose his homestead by a mere temporary absence from it, even a prolonged absence, if it be caused by necessity. The proof here shows that the owner of the homestead had to leave it temporarily, in order to make a living, as he could not secure the furnish or financial aid necessary to the operation of the farm. I do not know a more urgent necessity than to make a living; and everyone knows that from 1932 until the present people have had an extremely difficult time in securing the means and supplies to equip a farm which is without implements, etc., needed for the purpose of making a living on it.

Without undertaking to review the many cases which have been decided on this question, I shall content myself with referring to a few which in my opinion warranted the Chancellor in his findings, and support his judgment.

It is, of course, well known that what constitutes a necessity within the meaning of the homestead statute depends largely upon particular facts in the particular case. It may be said to be a question of fact, or decision on a trial of facts.

In Campbell v. Adair, 45 Miss. 170, it was held that actual, literal, physical, continuous occupation of the

homestead by some member of the family is not required; that under some circumstances occupancy by a tenant for the benefit of the family is sufficient. It was also said the waiver or forfeiture of the homestead right should be declared only upon clear and decisive proof of an intention totally to relinquish and abandon such premises animo non revertendi. The facts in this case and the discussion of them by the Court will not be set forth, as I do not desire to protract this opinion unduly.

In Jackson v. Coleman, 115 Miss. 535, 76 So. 545, 546, it was said: "Homestead laws would be construed liberally for the exemptionist, and . . . an abandonment would not exist unless it was clear from the proof that the exemptionist had removed from the homestead with the intention of not returning." In that case a widower, being unable to work on account of rheumatism, left his farm and leased it for five years in order to support his children from the rent, and who tried to regain possession of the farm after he was better, was held not to have abandoned his homestead within the meaning of the Code of 1906, section 2157.

In Gilmore v. Brown, 93 Miss. 63, 46 So. 840, it was again held that the homestead exemption laws are to be liberally construed in favor of the exemptionist; and it was also held that the fact that the owner of a country homestead voted and held office in a village to which his removal was claimed to have been temporary is not conclusive evidence of an abandonment of the homestead; that such owner may purchase a house in a village, move his family there for the purpose of educating his children, qualify there as a municipal elector and hold municipal office, without forfeiting his right to claim exemption for his country home, if he keeps actual possession of it, either in person or by some member of his family, cultivates it yearly, never ceases to claim it as his homestead, and always intends to return to it as soon as the object for which he removed to the village has

been accomplished. The Court cited numerous authorities from other states to support its conclusion.

In Tiser v. McCain, 113 Miss. 776, 74 So. 660, it was held that the exempt property of a decedent could not be partitioned without the consent of the widow; and that the fact that she was not actually living upon the property did not render it subject to partition, provided she used it.

In Collins v. Bounds, 82 Miss. 447, 34 So. 355, it was held that temporary removal from the homestead by husband and wife, with the intention of returning, is not such abandonment as to render valid the deed thereto by the husband, in which the wife did not join. This Court held to the same effect in Columbian Mutual Life Ins. Ass'n v. Jones, 160 Miss. 41, 133 So. 149. In that case the husband had moved to the city of Jackson from his country home, in order to be under the care of a physician, and to receive vocational training at Millsaps College, provision for which had been made by the United States Government. During this period both husband and wife lived in Jackson, but with the intention of returning to the homestead as soon as conditions permitted. The husband undertook to convey the homestead without the wife's signature; and it was insisted that the removal, coupled with his attempted conveyance, lost the exemption. However, the statute requires the consent of the wife; and not having obtained her signature to the deed, it was held to be invalid, and sustained the right of the wife in the country homestead.

In Ross v. Porter, 72 Miss. 361, 16 So. 906, 907, it was held that where an exemptionist abandons a rural homestead and acquires another in town, but later on abandons the latter with the intention, as soon as practicable, of reoccupying the country home; then, after arranging with his tenant, and making preparations therefor, was prevented from returning to his homestead by illness and subsequent death; the Court held that the country place became reinvested with its homestead character, and

was exempt from his debts. In the course of the opinion Judge Woods, speaking for the Court, after stating the pertinent facts, said: "In Wilson v. Grey, 59 Miss. 525, it was held, in effect, that an intention to speedily abandon a homestead, followed by an actual abandonment, would divest the residence of the character of a homestead. This rule will stamp the country place, in the case at bar, with the character of a homestead. S. H. Ross had abandoned the town house as a homestead, and had formed the fixed intention of reoccupying the country place as his homestead as speedily as possible. He had made the necessary preparations to reoccupy in September of October, and he only failed to actually take possession by reason of prostration on his deathbed, his death occurring late in November—a date subsequent to that on which he had arranged to enter."

In the case here the testimony shows that the owners of the homestead had at all times intended to reoccupy it as soon as they could arrange to finance it. It was necessary for them to live, and the salary or compensation which the husband received did not appear to have exceeded the living expenses of the family. In my opinion, they did reoccupy the homestead by moving thereon prior to the sale of the place under the judgment, and it would not be necessary for them to be personally present at all times. The occupancy they had made, and the arrangements, were sufficient to manifest their intention to occupy and claim the place as a homestead. Certainly the Chancellor was warranted in so finding from the testimony in the case; and it is for the Chancellor to decide questions of fact, and to draw conclusions from facts, where more than one reasonable conclusion might be drawn.